18 So.2d 423

## BENTON v. STATE.

### 4 Div. 789.

Court of Appeals of Alabama.
Jan. 11, 1944.

Rehearing Denied March 21, 1944.

See, also, 30 Ala.App. 526, 9 So.2d 762; 243 Ala. 274, 9 So.2d 764.

Powell & Fuller and Whaley & Whaley, all of Andalusia, and Lee & Lee, of Dothan, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

340

RICE, Judge.

Code 1940, Title 15, Section 389, by which we are governed, is in the following language: "In cases taken to the supreme court or court of appeals under the provisions of this chapter (on Appeals etc.), no assignment of errors or joinder in errors is necessary; but the court must consider all questions apparent on the record or reserved by bill of exceptions, and must render such judgment as the law demands. *But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant.*" (Italics supplied by us).

Appellant, here, was indicted for the offense of murder in the first degree, tried, and convicted of the offense of manslaughter in the first degree. His punishment was fixed at imprisonment in the penitentiary for the term of nine years.

We do not see the necessity of an extended discussion of the testimony. Appellant admitted that he shot Charles W. Mizell with a pistol and killed him. As his counsel state: "So far as the State's testimony goes the shooting was unprovoked and without a motive." We might add that said State's testimony—a part of it, at least—makes out against appellant a most aggravated case of murder in the first degree.

His own testimony, however, corroborated to an extent, indicates that he was not guilty by reason of having fired in self-defense—as that term was clearly defined to the jury.

Upon the trial he pleaded not guilty, and not guilty by reason of insanity. The issues thus raised were explicitly and elaborately defined to the jury; and left to them for their decision.

We have endeavored to comply fully with the terms of the Code section quoted at the beginning of this opinion. We think we have done so.

In the nature of things, it would not be worth while to here separately discuss every single ruling underlying every single exception reserved or received on the trial. For example, the large number of requested written charges refused to appellant may all be disposed of by the single simple statement that we have carefully examined the learned trial court's able and comprehensive oral charge to the jury, in connection with the some thirty-eight written charges given to the jury at his request. In our opinion—and we hold—the charges so given to the jury covered and included, correctly, or more favorably to appellant than was his due, every principle of the law possibly applicable to the issues on the trial. This rendered it unnecessary to give and without error to refuse *any* of the written requested charges so endorsed in the record. In fact, appellant's able coun-

sel, in their *two* elaborate briefs filed here, do not contend otherwise.

Concerning another large number of exceptions we may, as has counsel for appellant, pass them over as unworthy of detailed treatment. It will suffice to say that we have carefully examined them, and that it is our opinion that in the rulings underlying same there appears no error prejudicial to any right of appellant's. Our remarks here will be confined to those rulings made the basis of exceptions which are argued and discussed by the counsel in their respective briefs.

The pertinent part of Section 278 of Title 15 of the Code of 1940 reads as follows, to wit: "No objection to an indictment on any ground going to the formation of the grand jury which found the same can be taken to the indictment, except by plea in abatement to the indictment; and no objection can be taken to an indictment by plea in abatement except upon the ground that the grand jurors who found the indictment were not drawn by the officer designated by law to draw the same * * *."

Section 46 of Title 30 of the Code of 1940 provides as follows, to wit: "No objection can be taken to any venire of jurors except for fraud in drawing or summoning the jurors."

■ Measuring appellant's pleas in abatement to the indictment, and his motion to quash the venire for his trial, by the law as we have quoted in the next two preceding paragraphs, it is at once apparent that the trial court did not err in sustaining the State's demurrers to his pleas, and its motion to strike his motion to quash. The matters he sets up in his pleas, and in his motion, do not come up to the requirements requisite to their sustention. Hall v. State, 134 Ala. 90, 32 So. 750; Kinnebrew v. State, 132 Ala. 8, 31 So. 567; Jones v. State, 150 Ala. 54, 43 So. 179; Blevins v. State, 68 Ala. 92; Cross v. State, 78 Ala. 430; Wimbush v. State, 237 Ala. 153, 186 So. 145; Reynolds v. State, 27 Ala.App. 590, 176 So. 816.

■ It is well understood that the signature of the Solicitor is no part of the indictment proper; and that mere irregularities in filling the jury box do not render the venire void. Ala. & So. Dig., Indictment and Information, ☞33; Bell v. Terry, 213 Ala. 160, 104 So. 336.

■ It appearing that the bullets from appellant's pistol pierced the clothing of deceased, said clothing was introduced in evidence before the jury without error. Smith v. State, 183 Ala. 10, 62 So. 864; Rollings v. State, 160 Ala. 82, 49 So. 329; Watkins v. State, 89 Ala. 82, 8 So. 134; Letson v. State, 215 Ala. 229, 110 So. 21; Hyche v. State, 217 Ala. 114, 114 So. 906. The holding in the case of Boyette v. State, 215 Ala. 472, 110 So. 812, of course is without application here.

■ Deceased being admittedly shot by appellant with a pistol, we find no fault with the admission into the evidence of appellant's pistol—taken from him a short time after the shooting. Powe v. State, 214 Ala. 91, 106 So. 503.

■■ It is of course the law that while a non-expert witness can give an opinion as to the sanity or insanity of a person, yet for him to give his opinion that a person is insane he must show a continuous acquaintance with him of such intimacy as will enable him to form an accurate and truthworthy opinion as to his mental condition. And that whether a non-expert is shown to have the qualifications sufficient to authorize him to give an opinion whether another person is insane is a question addressed to the court in the exercise of a sound discretion, and not reviewable on appeal, except for palpable abuse. Jones v. State, 181 Ala. 63, 61 So. 434; Russell v. State, 17 Ala.App. 436, 87 So. 221, certiorari denied In parte Russell, 204 Ala. 626, 87 So. 227; Bass v. State, 219 Ala. 282, 122 So. 45.

■■ In the light of the contents of the last next preceding paragraph hereof, we do not find, after careful examination, that any ruling on the admission or rejection of testimony concerning appellant's mental condition at the time of the fatal rencountre, to which exception was reserved, requires revision here. This last statement applies equally to the refusal of the trial court to admit into the evidence the documents concerning appellant's admission into and his discharge from the Alabama Insane Hospitals; said admission and discharge being under the provisions of Code 1940, Title 15, Section 425, and occurring long after the shooting of deceased by appellant, and the documents concerning same tending in no way to indicate appellant's insanity at the time of said shooting.

342

■ In the opinion in the case of Pruitt v. State, 92 Ala. 41, 9 So. 406, our Supreme Court said: "Whatever rule may prevail in other states or countries, it is settled law in this state, that where a witness has been examined in a criminal trial, and cross-examined, or the opportunity afforded for cross-examination, by the party charged, and the witness dies, or becomes insane, or has gone beyond the jurisdiction of the state permanently, or for such an indefinite time that his return is merely contingent or conjectural, the testimony of such witness may be proven on a subsequent trial." The same principle is well stated in the opinions in the following additional cases, to wit: Lucas v. State, 96 Ala. 51, 11 So. 216; Jacobi v. State, 133 Ala. 1, 32 So. 158, certiorari denied 187 U.S. 133, 23 S.Ct. 48, 47 L.Ed. 106; Percy v. State, 125 Ala. 52, 27 So. 844; Sims v. State, 139 Ala. 74, 36 So. 138, 101 Am.St. Rep. 17; Burton v. State, 107 Ala. 68, 18 So. 240; Woodward v. State, 21 Ala.App. 417, 109 So. 119, 120.

As Presiding Judge Bricken expressed it for this court in Woodward v. State, supra: "The generally accepted rule appears to be that if *for any reason* it is impossible to produce the witness and have him testify in the subsequent proceedings, the evidence of such witness, given at a former trial or examination between the same parties, may be introduced."

In view of the contents of the last two next preceding paragraphs it appears, and we hold, the testimony given by the witnesses on the former trial of this case, who were absent on this trial—said witnesses being properly designated in the bill of exceptions—was properly allowed to be proven on the instant trial. The conditions prescribed by law were fully met in the preliminary proof.

The pleas were, as stated: not guilty; and not guilty by reason of insanity. Appellant, in support of his plea of not guilty by reason of insanity, produced testimony which he claimed indicated that he was suffering with what the doctors called "Bromide Psychosis," produced by taking excessive doses of a bromide compound prescribed for him. Be that as it may.

■ In arguing the case to the jury the Solicitor said: "We all know as a matter of common knowledge that over indulgence in liquor is just like taking too much bromide." Appellant's objection to this argument was overruled, and he reserved an exception to the ruling. That presents it properly to us for review.

Now there was no testimony whatever in the case that appellant had been at any time addicted to the "over indulgence in liquor"—for that matter, that he "indulged in liquor" at all. So the argument was possibly improper. We say *possibly* improper; because we are not now deciding whether or not it was permissible for the Solicitor to make the remarks "by way of illustration." We will just assume it was *not*.

But how was appellant injured? It seems to us not at all. He claimed insanity—caused from *one* thing. Manifestly the thing that *caused* it did not matter. The question was: "Was he suffering from it?"

The Solicitor's argument in question did not dispute it; if anything it *strengthened* appellant's claim. So we hold the court did not err *to his prejudice* in overruling his objection as noted.

What we have written is, we believe, fairly illustrative of the very large number of exceptions apparent. We have indicated the impracticability of writing to all of them. They have each had our careful study. No one of same is to a ruling that to our minds involves any new or novel principle of the law.

Appellant's able counsel, in their two voluminous briefs filed here, have seemingly attempted to be sure that we overlooked no ruling on the trial. We do not think we have done so, but see no need for a further detailed discussion.

The case was ably prosecuted and ably defended. The learned judge presiding manifested the most meticulous care to see that appellant's rights were accorded him. According to the record before us, they were.

We find no error to have been committed for which the judgment of conviction should be reversed.

It is affirmed.

Affirmed.

## On Rehearing.

PER CURIAM.

Counsel for appellant earnestly insist that the decision rendered in this cause affirming the action of the trial court in refusing to admit in evidence the documents concerning appellant's admission in-

to and his discharge from the Alabama Insane Hospitals is inconsistent with the opinion of the Supreme Court in the case of Anderson v. State, 209 Ala. 36, 95 So. 171, 178. But we cannot agree.

The rule announced in the Anderson case, supra, that "Every act of the party's life is relevant to the issue," has been modified. The rule now governing the admissibility of evidence in insanity cases is not "Every act of the party's life is relevant to the issue," but rather, every act of the party's life which throws light on the inquiry as to his mental capacity at the time in issue is relevant to the inquiry. Coffey v. State, 244 Ala. 514, 14 So.2d 122; Mitchell v. Parker, 224 Ala. 149, 138 So. 832.

Title 15, Section 425, Code 1940, provides the machinery for a preliminary investigation or inquisition of the sanity of one charged with a capital offense before that issue is submitted to a jury in the trial of the cause under a special plea. When it is made known to the court that there is reasonable ground for believing the defendant insane either at the time of the commission of the offense, or presently, this statute operates to suspend the right of the state, pro tempore, to proceed with the prosecution of the offense. An insane person cannot, and ought not, be put to trial. To do so would make a mockery of justice. The instant statute is designed to prevent such result. It is only after the commission of lunacy, made up of the Superintendent of the Alabama Insane Hospitals and two members of his medical staff, has made its written report finding the defendant to be presently sane that the state may proceed with the trial. On the coming in of the report of the lunacy commission the statute requires that the same shall be filed with the clerk of the court and be accessible to the judge presiding, to the solicitor and to counsel for defendant. When the report is filed, the trial begins (if the defendant is presently sane) and the statute has served its purpose and no longer influences the procedure.

Even conceding the general qualifications of the witnesses it must be admitted that if the report of the lunacy commission is legally admissible in evidence it must be by authority of this statute. The statute does not expressly, or impliedly, authorize the introduction of said report. If it were to be said that the statute does authorize the introduction of said report then it logically follows that the State had the right and privilege of introducing it the same as appellant. Well, of course, the State could not introduce the report unless with appellant's consent, without doing violence to Article 1, Section 6 of our Constitution, as appellant has the right "to be confronted by the witnesses against him." The State and the defendant have the right to cross-examine witnesses called by either side. But this right amounts to nothing if ex parte written statements are to be substituted for witnesses in the trial of a case involving life and liberty.

The foregoing aside, we cannot put the trial court in error in refusing to allow this evidence for another reason —best stated, we think, in the words of the late Mr. Justice Somerville in Odom v. State, 174 Ala. 4, 56 So. 913, 915, viz.:

"Although the issue was specifically as to the mental condition of the defendant at the time of the homicide, the inquiry was not limited to that time alone.

"And it is a sound general rule that insanity at any particular time, if shown to be habitual and permanent in its nature, is prima facie presumed as a matter of law to exist at any future time; and alone from its existence at a later time a presumption of fact may arise of its existence at a given prior time. * * * But in the latter case it is clear that the probative value of subsequent insanity to show insanity at any prior time will depend upon (1) the nature and degree of the insanity shown, and (2) its nearness or remoteness in point of time to the act under consideration. * * *

"Where considerable time has elapsed, the admission or rejection of such evidence and the general range of the inquiry must be left to the sound discretion of the trial court, since it can best determine such matters from its more intimate view and understanding of the whole evidence before it. * * * In the present case, even conceding the general qualifications of the witness, we discover no abuse of the trial court's discretion in rejecting opinion evidence of the defendant's insanity at the date of the second trial, more than a year after the commission of the homicide."

The situation in this case, with reference to the admission of the testimony being discussed, is such that we believe the trial court was justified in acting upon

the principles of law laid down by our Supreme Court in the Odom case just quoted from; and, in his discretion, sustaining the State's objection to the documents offered.

The application for rehearing is overruled and denied.