108 So.2d 448

**Ex parte STATE of Alabama, ex rel. John M. PATTERSON, Attorney General.**

**4 Div. 874.**

Supreme Court of Alabama.

Oct. 9, 1958.

Rehearing Denied Feb. 12, 1959.

John Patterson, Atty. Gen., MacDonald Gallion and Edmon L. Rinehart, Asst. Attys. Gen., Jas. H. Caldwell, Circuit Solicitor, Phenix City, and Henry Weihofen, Albuquerque, N. M., of counsel, for petitioner.

Roderick Beddow and G. Ernest Jones, Birmingham, for respondent.

COLEMAN, Justice.

The State, by the Attorney General, has filed in this court a petition praying for alternative writ of mandamus or rule nisi, ordering the Honorable J. Russell McElroy, as Special Judge of the Circuit Court of Russell County, "to commit * * * Silas Coma Garrett, III, to the Bryce Hospital * * * to be examined and observed by * * * Dr. J. S. Tarwater, as Superintendent * * * and two members of the medical staff of Bryce Hospital * * * with a view to determining the mental condition of the said Silas Coma Garrett, III, and the existence of any mental disease or defects which would affect his present criminal responsibility or his criminal responsibility at the time of the commission of the crime with which he is charged; or to appear * * * and show cause why he should not do so."

We issued the rule nisi to show cause, and Judge McElroy, hereinafter referred to as the respondent, duly filed motion to quash, demurrer, and answer.

Silas Coma Garrett, III, hereinafter referred to as the defendant, was indicted by the Grand Jury of Russell County for murder in the first degree. The indictment

was returned in open court on December 9, 1954. The answer of respondent admits that "* * * the said Garrett was arrested on, but not before October 10, 1955, on said writ of arrest issued on said indictment."

Appended to the order made by the respondent wherein he declined to commit the defendant to the State Hospital as requested by the State, there appears an able and comprehensive opinion by the respondent wherein he states certain material facts as follows:

"The defendant has not pleaded not guilty by reason of insanity. He has not asserted his mental incompetency to stand trial. He has not been arraigned on such indictment. There has been no request either by the state or the defendant that the defendant be arraigned on such indictment.

"On October 12, 1955, defendant was in the custody of the sheriff of Russell County, under a writ of arrest issued on such indictment. On that day, i. e., October 12, 1955, this circuit court, acting on the joint recommendation of the state and the defendant, ordered that the defendant be admitted to bail in the amount of $12,500. On that day, i. e., October 12, 1955, the defendant was released on bail produced by him as permitted by such order of the court.

"On the same day that the defendant was released on bail, i. e., October 12, 1955, there was handed to me a written report by the superintendent of the Alabama state hospitals. The superintendent stated in such report, so far as is here pertinent, that 'there is reasonable ground to believe' that the defendant 'was *insane* at the time of the commission of such offense or presently.'

"On October 13, 1955, I issued an order which recited (a) my reception of the superintendent's report mentioned above, (b) that one of the law-

yers for the state had suggested to me that it is my duty to order that the sheriff forthwith deliver the defendant to the superintendent of Alabama state hospitals under the provisions of section 425; and (c) that one of the defendant's lawyers had stated to the circuit solicitor of Russell county in a telephone conversation in my presence that the defendant would never enter a plea of not guilty by reason of insanity to the indictment referred to above. This order of October 13th directed that a hearing be held on October 20th on the matter of whether I am under the duty to order the sheriff to deliver the defendant to the superintendent.

"The lawyers for the state and for the defendant, and the defendant in person, appeared at the hearing.

"At the beginning of the hearing, the state presented a second written report by the superintendent, which I then considered and now consider as supplementary to the first written report. The material matter added by the second written report is a statement therein tending to show the superintendent's opportunity to acquire knowledge of the defendant's mental condition.

"Immediately after the superintendent's second report was handed to me, the defendant's lawyers handed to me a written statement of the defendant's objections to the proposal that I order the sheriff to deliver the defendant to the superintendent.

"Included among the defendant's objections were objections that the proposed commitment of the defendant to the Alabama state hospitals would deprive him (a) of the constitutional right to bail, and (b) of liberty without due process of law as guaranteed both by the Alabama and federal constitutions.

"No evidence whatever was offered or introduced at the hearing. Both

the state and defendant agreed that the matter before me for hearing did not authorize the reception of any evidence whatever with respect to the defendant's mental condition at any time whatever.

"The state has not applied to this circuit court for a revocation of this circuit court's order of October 12, 1955, referred to above, admitting the defendant to bail in the sum of $12,-500."

We do not understand that there is any material dispute as to the accuracy of the foregoing statement of the case.

Respondent states his decision as follows:

"XIII. The Gist Of The Decision Now Being Made.

"*I hold that a defendant* who is under indictment for a capital offense, who is at large on bail, and who has neither pleaded not guilty by reason of insanity nor asserted that he is mentally incompetent to stand trial, *cannot be lawfully committed, over his objection, to the Alabama state hospitals under section 425 for the reason that such a commitment would be (a) a deprivation of the defendant's constitutional right to bail* in violation of section 16 of the Alabama constitution *and (b) a deprivation of his right to liberty without due process of law* in violation of section 6 of the Alabama constitution.

"XIV. Matters Not Decided.

"I decide nothing other than is stated above."

The statute here involved is § 425 of Title 15, Code 1940, which originated as Act No. 157, Acts of 1933, Extra Session, page 144, and in the part here pertinent recites as follows:

"Whenever it shall be made known to the presiding judge of a court by which an indictment has been returned against a defendant for a capital offense, by the written report of not less than three reputable specialist practitioners in mental and nervous diseases, appointed by the judge, or by the written report of the superintendent of the Alabama state hospitals, that there is reasonable ground to believe that such defendant was insane either, at the time of the commission of such offense, or presently, it shall be the duty of the presiding judge to forthwith order that such defendant be delivered by the sheriff of the county to the superintendent of the Alabama state hospitals, who is charged with the duty of placing such defendant under the observation and examination of himself and two members of his medical staff to be named by him, constituting a commission on lunacy, with the view of determining the mental condition of such defendant and the existence of any mental disease or defect which would affect his present criminal responsibility, or his criminal responsibility at the time of the commission of the crime.

"Such defendant shall remain in the custody of the superintendent of the Alabama state hospitals and subject to the observation of and examination by such commission of lunacy for such length of time as may in the judgment of the commission of lunacy be necessary to determine his mental condition so far as it affects his criminal responsibility."

That act came before this court in 1936 in Oliver v. State, 232 Ala. 5, 166 So. 615, a case which concerned a defendant indicted for and convicted, of murder in the first degree with the death penalty imposed. In that case, the defendant insisted that the trial court erred in refusing to appoint a lunacy commission to examine him under the Act of 1933. In holding that the trial court did not err in refusing so to do this court said:

"Under the provisions of the act of 1933 (Gen.Acts 1933, pp. 144, 145), there was no error in refusing defendant's motion to stay the trial in order to appoint a special commission or the superintendent of the state hospitals for the insane to examine him and report his mental condition when the crime was committed and at the time of the trial. This statute merely states or confirms the inherent powers of a court in the premises, as to a defendant to be placed upon trial for crime. Alabama Great Southern R. Co. v. Hill, 90 Ala. 71, 8 So. 90, 9 L.R.A. 442, 24 Am.St.Rep. 764; Id., 93 Ala. 514, 9 So. 722, 30 Am.St.Rep. 65. The former statute on the same subject, section 7178, Code of 1907, section 4575, Code of 1923, was held, not mandatory, merely discretionary, for the purpose of advising the court. Rohn v. State, 186 Ala. 5, 65 So. 42; Granberry v. State, 184 Ala. 5, 63 So. 975. The former statute bears marked similarity to the act of 1933 (Gen.Acts 1933, p. 144), and was held not mandatory. Gast v. State, 232 Ala. 307, 167 So. 554.

"In construing a statute, if its terms will permit, it should be construed to sustain its constitutionality. If this statute be held to be mandatory, a constitutional question will be presented, in that the right to pass upon the sanity of a defendant to be tried for crime in the circuit court, is a prerogative right that may not be denied that court. There was no error in the denial of the defendant's motion by the trial court." 232 Ala. 5, 9, 166 So. 615, 616.

The constitutional question referred to concerns the separation of the powers of government required by §§ 42 and 43 of the Constitution of 1901. In Montgomery v. State, 231 Ala. 1, 3, 163 So. 365, 367, 101 A.L.R. 1394, it was said:

"The state government, as pointed out in the case of State ex rel. French v. Stone, 224 Ala. 234, 139 So. 328, is divided into three coordinate branches, legislative, judicial, and executive; each has a sphere of action, and within that sphere each is, and must be regarded, as, supreme. Powers confided to the one cannot be exercised by the others. That the Legislature, in the absence of constitutional restraint, is all-powerful in dealing with matters of legislation, it must be conceded, but the Legislature can at no time usurp the functions of either the executive or judicial department, and when it attempts to do so, its acts are abortive. Nor can it, in the exercise of its legislative powers, transfer from the executive department to the judicial department power expressly and exclusively conferred upon the executive department by the Constitution. Any attempt to do so would be just as abortive as if the Legislature itself had attempted to exercise that power in the first instance."

In the case at bar, a controversy exists between the state and the defendant wherein the state contends that defendant should be delivered by the sheriff "to the Superintendent of the State hospitals," to remain in his custody "for such length of time as may in the judgment of the commission of lunacy be necessary to determine his mental condition," etc. The defendant says he cannot be confined lawfully in the State Hospitals, or elsewhere, so long as he is entitled to remain at large on bail.

■■ The determination of this dispute requires, as we view it, the exercise of judicial power, as that term is used in the Constitution. We think it is clear that the power to decide whether a defendant is entitled to remain at large on bail is a judicial power. To place that power of decision in the superintendent of the state hospitals and to deny it to the court is contrary to § 43 of Constitution of 1901. If, however, § 425, Title 15, were manda-

tory on the presiding judge, that would be the effect of the statute.

Since Oliver v. State, supra, this court in four other cases, and the Court of Appeals in one case, have said that § 425 of Title 15, Code 1940, is discretionary and not mandatory. Gast v. State, 232 Ala. 307, 167 So. 554; Burns v. State, 246 Ala. 135, 19 So.2d 450; Reedy v. State, 246 Ala. 363, 20 So.2d 528; Hunt v. State, 248 Ala. 217, 27 So.2d 186; Puckett v. State, 31 Ala.App. 428, 18 So.2d 834.

In Reedy v. State, supra, in 246 Ala. at page 365, 20 So.2d 528, in the summary of the attorney general's brief is found the following proposition of law urged by the state in that case:

"* * * Section 425, Title 15, Code, is not mandatory, and refusal to appoint commission, or Superintendent of Insane Hospital, thereunder was not error. Oliver v. State, 232 Ala. 5, 166 So. 615; Gast v. State, 232 Ala. 307, 167 So. 554; Benton v. State, 31 Ala.App. 338, 18 So.2d 423; Id., 245 Ala. 625, 18 So.2d 428; Burns v. State, [246 Ala.] 135, 19 So.2d 450. Motions under Code, Title 15, §§ 425, 426 and 428, are not matters of right but are addressed to sound discretion of court. * * *."

This court held with the state in the Reedy case, supra, and, for the reasons herein set out we adhere to that decision.

No remedy by appeal at the instance of the state exists to review the order here complained of, and if the state is entitled to any review of that order, it must be by mandamus. Because, however, we are clear to the view that the order complained of is not erroneous and that the writ is not in any event due to issue, we need not determine whether mandamus is the appropriate method of review and, therefore, pretermit consideration of that question.

We have sought to show that § 425, Title 15, is not mandatory, but discretionary with the presiding judge, and we must now consider whether or not the respondent abused his discretion in refusing to commit defendant for the purposes aforesaid.

It appears from the record that the only matter before the respondent when he acted was the written report of the Superintendent of the Alabama State Hospitals. The respondent's opinion states that both the state and the defendant agreed that under § 425, supra, there could not be presented to the judge any evidence of defendant's mental condition other than this written report. Whether or not other such evidence could be presented is not a question in this case and we express no opinion thereon. What we do say is that to require the judge to act on the presentation of the report alone and to foreclose him from exercising any discretion is to take judicial power from the judiciary and place it in the hands of an officer of the executive department of the state government. If we were to say now that the judge abused his discretion because he failed to act when the report of the superintendent was before him, then we would be giving the report a mandatory effect which the Constitution forbids the report to have. Thus it seems to us clear that there has been no abuse of discretion by the respondent in this case.

Inasmuch as the respondent has clearly stated his reasons for refusing to commit the defendant by holding that to do so would be a denial of bail to the defendant contrary to the requirements of § 16 of the Constitution of Alabama of 1901, we deem it appropriate that we respond to the state's argument that such a holding is incorrect.

Section 16 of Constitution of 1901 provides:

"That all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great; and that excessive bail shall not in any case be required."

Except for the last clause prohibiting excessive bail, this provision comes to us unchanged from the Constitution of 1819, Art. I, Section 17, Code 1923, Vol. 1, page 63. With reference to this section, this court in 1851 said:

"* * * At the common law, all cases were bailable; but it was competent for the Legislature, in the absence of a constitutional inhibition, to deprive the citizen of this right, or so to modify as to render it valueless. *The clause was designed* not to place a perpetual restriction upon the common law right of the citizens of the State, in the matter of bail, but on the contrary to secure by the fundamental law of the State, and *to place this right, in the given cases, beyond the power of either legislative or judicial interposition;* creating, however, no restriction upon the Legislature as to the excepted cases, 'where the proof is evident or the presumption great.' It was not the intention of the framers of the constitution to keep a party incarcerated in prison before conviction, as a punishment for the offense with which he may be charged. Until conviction, the law presumes him innocent, and merely provides for his being forthcoming for trial and to suffer its penalty, should his guilt be ascertained according to its prescribed forms. * * *" (Emphasis supplied.) Ex parte Croom & May, 19 Ala. 561, 570.

If by a statute the legislature could require that a defendant, otherwise entitled to bail, should be committed to the State Hospitals and there confined while awaiting trial, that defendant would be denied bail as effectually as if he were confined in jail or elsewhere. If § 425, Title 15, requires that a defendant shall be confined on the report of the superintendent, the defendant would be denied bail by that report as effectually as by legislative act. The legislature cannot do indirectly that which it is forbidden to do directly. San-

ders v. Cabaniss, 43 Ala. 173, 188; State ex rel. French v. Stone, 224 Ala. 234, 237, 139 So. 328.

In deciding that a person indicted for a felony but enlarged on bail is not "in confinement" as those words are used in what is now § 428 of Title 15, this court said:

"* * * The words '*in confinement*' are used to import those who are imprisoned in the county jail, awaiting a final trial, or in the actual custody of the officers of the law, as distinguished from those not having been arrested, or, having been arrested, have been discharged from arrest on bail. It is true that a man's bail are looked upon as his jailers of his own choosing, and for some purpose he is esteemed to be in their custody, and in the prison of the court. This, however, is rather a legal fiction, indulged to secure to the bail the ample right by law to detain the principal, and to surrender him in discharge of their recognizance or obligation. 'Admission to bail' is defined by the statute as 'the order of a competent court, magistrate, or officer, that the defendant be discharged from actual custody on bail.' R.C. § 4322 (sic., 4232). When so discharged, he is not 'in confinement,' within the meaning of the statute, under which the circuit judge was proceeding." (Parenthesis added.) Ex parte Trice, 53 Ala. 546, 548. See also, Ex parte Garrett, 262 Ala. 25, 76 So.2d 681.

In the state's brief, page 15, in the instant case we find the following statement:

"* * * We submit that the safeguards provided by Section 425 are wholly adequate:

"(1) The act cannot be applied to any person whomsoever. It applies only to persons who are already subject to being held in confinement on a

validly instituted criminal charge. In fact the statute is narrower than similar statutes found in other states in that it applies only to persons under charge of a *capital* crime."

Paragraph 2 of the state's petition contains the following recital:

" * * * that said Silas Coma Garrett, III, was released upon $12,500 bail upon recommendation of the State of Alabama and of said defendant Silas Coma Garrett, III, by order of respondent J. Russell McElroy, dated the 12th day of October, 1955, a copy of which is annexed hereto and made a part hereof as Exhibit B."

Exhibit B recites that " * * * on joint recommendation of the State of Alabama and the defendant, it is ordered by the court that the defendant be admitted to bail in the amount of $12,500.00."

Under that order, defendant, on posting proper security was not " * * * already subject to being held in confinement * * *." but was entitled to be released from confinement, and, as we understand the proposition from the state's brief quoted above, the act could not apply to him.

In view of our conclusion that to commit defendant as prayed for by the state would deny his constitutional right to bail, we pretermit as being unnecessary any consideration of whether such an application of the statute would be a denial of due process.

Cases from other states have been cited to us as authority for holding that commitment of defendant for examination would not violate any of his constitutional rights. Whatever may be the validity of such argument and those cases, which we do not concede, we are bound by the Constitution of this State and no useful purpose would be served by extending this opinion in distinguishing those cases from our holding here, hence we refrain from doing so.

For the reasons above set forth, the writ prayed for is due to be denied.

Writ denied.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.