265 So.2d 130

**David W. PRUETT et al.**

v.

**James A. PATTON.**

**8 Div. 471.**

Supreme Court of Alabama.

June 8, 1972.

Rehearing Denied Aug. 10, 1972.

Harris, Harris, Shinn & Harris, Decatur, for appellants.

James A. Patton, Tuscumbia, pro se.

PER CURIAM.

Respondents, invested with authority to issue county warrants in payment of services, appeal from a judgment of the Circuit Court ordering the issuance of a peremptory writ of mandamus, directing them to issue a warrant to appellee in the sum of $2,000 as back salary for legal services as Solicitor of a local inferior court.

There is very little, if any conflict in the evidence. The sole issue for judicial consideration is the constitutionality of a provision in a local act increasing the salary of appellee (petitioner below), who was appointed Solicitor of a new inferior court. Appellants (respondents below) contend the provision increases appellee's salary during his term of office. Appellee denies such invalidity.

■ The constitutional provisions involved are §§ 68 and 281 of the Constitution of 1901 and amendment 92. These provisions and amendment carry inhibitions against a salary increase of an officer during his term of office. Amendment 144 of said Constitution does not apply to the office of County Solicitor. Such official is not an officer of the government of Colbert County nor of any "political subdivision thereof", within the purview of this amendment.

An inferior court for Colbert County was created by Local Act No. 32. This Act was approved on June 27, 1947. It designated the title of the court as Colbert Law and Equity Court. The Act provides for a Solicitor of the court, to be appointed by the Governor, and subsequently to be elected by the people, at an annual salary of $2,400. The term by election began in January, 1949. The term of office was fixed at six years. See Local Acts of 1947, p. 25.

By Act No. 666, approved September 4, 1951, Acts of Alabama, Vol. 2, p. 1148, the legislature amended eighteen sections of Act 32, supra. These amendments were quite extended. It is not necessary, and we will not undertake, to detail these amendatory provisions.

Subsequent amendatory changes in the original Act were made by Act No. 553, approved September 9, 1953, Acts of Alabama, Regular Session, 1953, p. 778. The sections amended were 8 and 20. This Act No. 553 also amended sections 14, 31 and 34 of Act No. 32 as amended in 1951, Acts of 1951, supra. The salary of the Solicitor was increased by Act No. 553 to $3,600 per annum.

Act No. 1176, approved September 13, 1969, effective October 1, 1969, Acts of Alabama, Special and Regular Sessions, 1969, page 2193, abolished the Colbert County Law and Equity Court (Acts of 1947) and created in lieu of said court an inferior court with specified jurisdiction and procedural mandates in both civil and criminal cases; also it has equity jurisdiction. This court is designated as Colbert County Court.

The Act No. 1176, supra, directed the Governor to appoint appellee to the office of Solicitor. The Governor complied. The Act fixed the Solicitor's salary at $6,000 per annum with no fixed term of office. Appellee resigned from this office on August 31, 1970.

Appellants paid appellee a salary at the rate of $3,600 per annum while in office, leaving a balance of $2,000 unpaid to the date of his resignation. There is no dispute as to the correctness of the amount unpaid, based on the annual salary of $6,000 as provided in the 1969 Act—No. 1176, supra.

We are not here concerned with the right of the legislature to abolish the Court of Law and Equity and to create the Colbert County Court in lieu thereof, with added features. Section 171, Constitution of 1901, provides that, "The legislature shall have the power to abolish any court except the Supreme Court and the probate courts, whenever its jurisdiction and functions have been conferred upon some other court."

We held in Cherokee County v. Savage, 249 Ala. 688, 32 So.2d 803(7) that the inhibition in § 171, supra, which precludes

the legislature from depriving a court of jurisdiction without at the same time lodging it in some other tribunal, was directed at the courts created by the Constitution alone, and would not prevent the legislature from abolishing a court which it had itself created. The abolished court, Colbert County Law and Equity Court, was not created by the Constitution alone. It was a statutory court without sanction or protection by the Constitution as to its longevity.

Appellant here asserts that the Colbert County Law and Equity Court (of 1947) was abolished and the Colbert County Court (of 1969) was created to provide appellee (the Solicitor of said court) with an increase in salary during his term of office which originated while the Law and Equity Court was functioning as an active tribunal. The contention is that the legislation creating the new court and making the change was a mere colorable pretext, and a sham, and that it was the intention of the legislature to evade the Constitution, or those provisions, which preclude an increase in appellee's salary during his term of office. Carnley v. Moore, 218 Ala. 274, 118 So. 409; State of Washington, ex rel. Troy, et al. v. Yelle, 27 Wash.2d 99, 176 P.2d 459; Morgan County v. Edmonson, 238 Ala. 522, 192 So. 274; 11 Am.Jur., Constitutional Law, § 95, p. 724; 67 C.J.S. Officers § 95a, p. 343; Kearney v. Board of State Auditors, 189 Mich. 666, 155 N.W. 510.

Appellants, in support of their contention that the law creating the new court is merely a colorable pretext to increase appellee's salary, point to the similarity and also identical verbiage of Act 1176, supra, of 1969, and Act No. 31, supra (1947) and its amendments. Sixteen sections of Act No. 1176, supra, have identical verbiage with the provisions of the original 1947 Act and the amendatory Acts of 1951 and 1953. Many of the remaining sections have marked similarity with like import. Section 36 is new. It provides for a probation office for juveniles. Also, there are other provisions that do not appear in the prior Acts. Section 37 is new. It directs the

county governing body to provide office space and telephone service for the Solicitor. Section 41 in the 1969 Act is particularly significant. It abolishes the office of the Solicitor as of January, 1971, and directs that the duties of the Solicitor be performed by the District Attorney and his assistant.

■ Although many provisions, as we have pointed out, are identical, while others have similar import, dealing with procedure and duties of the officers, etc., we see no reason why the legislature was not free to exercise its prerogative and consolidate the original Act of 1947, its numerous amendments in 1951 and 1953, into a new Act that gives the court another name, and also add new provisions. Although the changes and added provisions might have been enacted by amendatory procedure, it was not compulsory. The legislature, without just accusation of Constitutional evasion or colorable pretext, was free to abolish the old court and start over again with a new court. The 1969 Act creating a new court certainly is less confusing, and more convenient, than the original Act with its numerous amendments enacted in subsequent years. The new Act avoided additional amendments to the original Act of 1947.

We now refer to some of the decisions of this court dealing with constitutional issues. These references we think are pertinent to the instant case.

We said in Owens v. City Council of Troy, 229 Ala. 439(2), 157 So. 865 that it is our duty to uphold rather than destroy a legislative enactment, unless convinced to the contrary beyond a reasonable doubt. We declared a statute under consideration was unconstitutional.

We also observed in Zeigler v. South & North Alabama R. R., 58 Ala. 594(1):

"In pronouncing on the constitutionality of an act of the legislature, the court necessarily passes judgment on the legality of an act which has received the sanction of a co-ordinate department of

the government. Hence, the courts approach such inquiry with a due sense of its magnitude [sic] and solemnity, and indulge the presumption that the enactment in question is constitutional, until clearly convinced to the contrary. * * "

We also declared in Fitzpatrick v. State, 169 Ala. 1, 53 So. 1021(7), that unless an act is patently unconstitutional on its face, the presumption should be in favor of its validity.

The presumption is that a statute was passed in good faith. Howell v. Johnson, 34 Ala.App. 570, 42 So.2d 644(9), cert. den. 253 Ala. 63, 42 So.2d 649.

The disputant of a law's constitutionality carries the burden of persuasion. State v. Anderson, 39 Ala.App. 380, 101 So.2d 96 (3). Statutes are presumed to be valid, and he who challenges has the burden of clearly establishing invalidity. County Board of Education of Jefferson County v. State Tax Commission, 237 Ala. 434, 187 So. 414 (7).

 The legislative body is presumed to intend that legislative acts shall not violate the Constitution, and be utterly void. Any reasonable construction will be given to effectuate such intent. It is the duty of the courts to give the statute construction that will sustain its validity if reasonably possible. Stone v. State, ex rel. Courtney, 233 Ala. 239, 171 So. 362(6, 7).

In the instant case, the official term of appellee, under Act 32, supra, as amended in 1951 and 1953, would have terminated in January, 1973. The legislature in Act No. 1176 (1969) did not fix the term of office for six years as was done in the original Act of 1947 as amended, but elected to abolish his office, effective January, 1971, and transfer the duties of the office to the District Attorney of that circuit court district. Any attempt to abolish the office by amendment of Act 32, supra, certainly was constitutionally questionable. The legislature preferred a route that was possibly free of constitutional inhibition. That issue is not here raised.

 The increase in salary, effective October 1, 1969, when the new court came into existence, was only temporary, lasting approximately thirteen months. We are not convinced to the degree required by law, supra, that the legislature was actuated in creating a new court to evade the constitutional inhibition which denies appellee an increase in salary during his term of office. It is apparent that the legislature wished to abolish the office of Solicitor. The interim increase in salary and the reappointment of appellee to fill this interim office were mere incidents. The mere fact that appellee was named as Solicitor for the interim term, and given an increase in salary for a short duration does not suffice to bring into play the constitutional inhibition that precludes an increase in salary during the term of office. Morgan County v. Edmonson, supra. We are unwilling to impute bad faith to the legislature and charge them with colorable pretext (sham) and constitutional evasion as appellants here contend.

The judgment of the trial court ordering the issuance of a peremptory writ of mandamus is affirmed.

On the date of deliverance of this judgment, one office of Associate Justice is vacant, and there are only the Chief Justice and seven Associate Justices.

 In the instant case, the Chief Justice is disqualified and the number of Justices competent to sit is reduced to seven. Under these circumstances and Tit. 13, § 14, Code 1940, as Amended, the concurrence of four Justices suffices for the determination of this cause.

Affirmed.

COLEMAN, HARWOOD, BLOODWORTH and MADDOX, JJ., concur.

MERRILL and McCALL, JJ., dissent.

MERRILL, Justice (dissenting):

"The legislature cannot do indirectly that which it is forbidden to do directly." Ex

parte State ex rel. Patterson, 268 Ala. 524, 108 So.2d 448; Montgomery v. State, 231 Ala. 1, 163 So. 365. In the early case of Sanders v. Cabaniss, 43 Ala. 173, this court stated: "It is a very clear proposition, that what cannot lawfully be done directly, cannot be done indirectly—no device, though it be so cunningly contrived as to make wrong appear to be right, can justify it." This statement is quoted and followed in State ex rel. French v. Stone, 224 Ala. 234, 139 So. 328. All of these cases held that a legislative enactment was unconstitutional.

Amendment 92 to the Alabama Constitution of 1901, known as the "Boutwell Amendment" was ratified in 1952 and it provides, in part, that the legislature shall not increase the salary of a state or county officer, who is elected for a fixed term, during the term for which he is elected or appointed (subject to one exception not here applicable).

Every single change in the court that was made by Act 1176 could have been made by amendments to the then existing law governing the Colbert County Law and Equity Court, but the immediate salary raises to the officers of that court would have been patently unconstitutional because they were contrary to Amendment 92. So the existing court was abolished and another court with a different name was created and the same judge and solicitor of the abolished court were named in Act 1176 as the respective judge and solicitor of the new court.

In Carnley v. Moore, 218 Ala. 274, 118 So. 409, some twenty-four years before Amendment 92 was ratified, the Act before the court divided Coffee County into four commissioners districts, provided for the election of a commissioner from each district, provided for staggered terms, purported to impose additional duties and increased their compensation. This court said:

"The claim or compensation sought by the official was likewise offensive to the provisions of sections 68 and 281 of the Constitution, being in the nature of an increase of the county official's compensation during the 'term of his office', * * *

"* * * We are of opinion that the act in question was a mere effort or colorable pretext to increase the compensation of the county commissioners, and not within the decision of Tayloe v. Davis, 212 Ala. 282, 102 So. 433, 40 A.L.R. 1052. * * *"

In Tayloe v. Davis, supra, it was held that the compensation of a public officer could be increased during his term to compensate him for added duties placed upon him. From then until 1951, many Acts of the Legislature were concerned with adding additional duties and increasing salaries of city, county and state officials. In 1951, to curb this type of legislation, the "Boutwell Amendment" was passed and it was submitted to the people and ratified in 1952.

It is my opinion that Act 1176 "was a mere effort or colorable pretext to increase the compensation" of the solicitor, even though his office would be abolished at the end of what would have been his term of office under the former Act.

In 67 C.J.S. Officers § 95a, p. 343, the text reads:

"Provisions prohibiting a change in compensation have been held to be mandatory and to prevent either direct or indirect changes; they may not be dispensed with, circumvented, or ignored. * * *"

That statement is supported by the cases cited in the notes and by our case of Carnley v. Moore, supra.

I would hold that the attempt to immediately raise the solicitor's salary (he has not yet received the raise and no longer holds the office) is contrary to Amendment 92 and, therefore, void and without effect.

In every regular session of the Legislature, Acts pertaining to the salaries of county officers are passed, which, if con-

tested, would be held to be unconstitutional, some because of the reason in Carnley v. Moore, supra, and others because they are not general bills with local application and were not advertised as required by Section 106 of the Constitution. But before the courts can rule on those Acts, they must be contested by someone with authority so to do. Here, the members of the County Commission of Colbert County did contest the salary raise to the solicitor and they had the authority to question the payment of county funds for that purpose. I think they were correct in raising the constitutional question and that the better position of courts is to uphold the Constitution rather than further encourage its circumvention by indirect changes or methods or other violations of the Constitution.

I respectfully dissent.

McCALL, J., concurs in this dissent.