163 So.2d 607

**STATE of Alabama**

v.

**INTERNATIONAL PAPER COMPANY.**

1 Div. 168.

Supreme Court of Alabama.

April 16, 1964.

McCorvey, Turner, Johnstone, Adams & May, Mobile, for appellee.

Richmond M. Flowers, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellant.

GOODWYN, Justice.

The State Department of Revenue made an assessment against International Paper Company of an additional forest products severance tax for the period January 1, 1959, through December 31, 1959. International appealed to the circuit court of Mobile County, in equity, where a decree was rendered setting aside and annulling the assessment. The State brings this appeal from that decree.

The evidence consisted of testimony taken orally before the court and a stipulation entered into by the parties.

The question to be resolved is whether the term "pulpwood," as used in the Forest Products Severance Tax Act (Act No. 169, appvd. June 23, 1945, Acts 1945, p. 285, § 3, Subdivision 3, as amended by Act No. 385, appvd. Sept. 9, 1955, Acts 1955, Vol. II, p. 921 [the amendment did not change Subdivision 3 of § 3]; Recompiled Code 1958, Tit. 8, § 231(4)) includes "wood chips" made by lumber manufacturers from slabs, edgings, or the residue removed or sawed from logs in manufacturing lumber from such logs and then sold to paper manufacturers for use in making pulp.

The parts of the Act here pertinent are as follows:

"Section 1. The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning: * * * (e) The term 'forest products' means logs, timber, pulpwood, chemical wood, bolts, cross ties and switch ties, mine ties, coal mine props, ore mine props, poles, piles, turpentine (crude gum) and stumpwood (tarwood). * * *

"Section 2. To provide further for conservation of the natural resources of the state by protection of the forest products and development of the forestry program, there is hereby levied, and shall be collected as herein provided, a privilege tax on account of the business activities upon every person engaging or continuing to engage in the state in the business of severing timber or any other forest products from the soil, for sale, profit or commercial use whether as owner, lessee, concessionaire or contractor. * * *

"Section 3. The measure of the tax is at the following rates: 1. On pine lumber twenty (20¢) cents per thousand feet board measure lumber tally. Where the timber is sold as logs and is not converted into lumber in Alabama, the rate shall be twenty (20¢) cents per thousand feet log scale (Doyle Rule) except that logs under eight inches in diameter inside bark at small end be scaled as containing one foot log scale for each foot of length. 2. On hardwood, cypress and all other species of lumber eight (8¢) cents per thousand feet board measure lumber tally. Where the timber is sold as logs and is not converted into lumber in Alabama, the rate shall be twenty (20¢) cents per thousand feet log scale (Doyle Rule) except that logs under eight inches in diameter inside bark at small end shall be scaled as containing one foot log scale for each foot of length. 3. *On pulpwood*, chemical wood, bolts, *six*

*(6¢) cents per standard cord of one hundred twenty-eight (128) cubic feet.* 4. On cross ties .6 of one per cent per piece and on switch ties one (1¢) cent per piece. 5. On mine ties and coal mine props, five (5¢) cents per 100 pieces. 6. On pine ore mine props, thirty (30¢) cents per thousand feet log scale (Doyle Rule) and on hardwood ore mine props, twenty (20¢) cents per thousand feet log scale (Doyle Rule) except that props under eight inches in diameter at small end shall be scaled as containing one foot log scale for each foot of length. In lieu of the foregoing schedule of taxes on ore mine props, the taxpayer may elect to pay the taxes due thereon at the rate of one dollar and twenty-five cents ($1.25) per thousand lineal feet regardless of species. 7. On piling, three fourths (¾ths) of one (1%) per cent on invoice value at loading out point which shall be based on the amount paid for the pilings at the stump. 8. On poles, one half (½) of one (1%) per cent on invoice value at loading out point which shall be based on the amount paid for the poles at the stump. 9. On turpentine (crude gum), six (6¢) cents per barrell of 400 pounds. 10. On stumpwood (tarwood), five (5¢) cents per ton (2,000) lbs.)." [Emphasis supplied.]

The parts of the stipulation here pertinent are as follows:

"2. The Appellant [International Paper Co.] at its paper mill in Mobile County, Alabama, is in the business of manufacturing pulp, paper and paper products.

"3. The Appellant during the period from January 1, 1959, through December 31, 1959, purchased its pulpwood from others by the standard cord of 128 cubic feet. Approximately 18 per cent of such pulpwood was directly converted into pulp by the groundwood process, and the remainder into wood chips by Appellant at its said paper mill. That portion of the pulpwood which was converted into wood chips as above described was then converted into pulp by chemical cooking, and both types of pulp were thereafter manufactured into pulp, paper and paper products. The Appellant has collected from the dealers from whom it purchased its aforesaid pulpwood the Alabama Forest Products Severance Tax on said pulpwood, and has remitted said tax proceeds to said Department, and the same is not involved in this suit.

"4. The subject of this suit is the applicability of the aforesaid severance tax on wood chips. Such wood chips were manufactured at the sawmills, from whom Appellant purchased the same, from what is known as slabs, edgings, or the residue that is removed or sawed from logs by such sawmill when said logs are manufactured into lumber. The said slabs, edgings, or residue were thereupon manufactured into wood chips by means of the sawmill's chipping machine and were then sold and shipped in this form to the Appellant. Thereafter such wood chips were converted by Appellant through a chemical cooking process into pulp which was thereafter manufactured into paper and paper products. The Alabama Forest Products Severance tax as applied to the timber from which the above described logs were taken, and in turn, from which the above described slabs, edgings, and residue were taken, was computed and paid in accordance with the board measure lumber tally as set forth and described in Subsection 1 of Section 3 of the Alabama Forest Products Severance Tax Act as amended. In scaling or measuring according to the board measure lumber tally formula as is provided in the aforesaid Subsection, slabs, edgings and residue are not included.

"5. The final assessment of the Alabama Forest Products Severance Tax for the said period beginning January

1, 1959, and ending on December 31, 1959, is a deficiency assessment covering the tax on the wood chips manufactured from the slabs, edgings, and residue produced as described in paragraph 3, plus interest on such tax to date of said assessment.

"6. The amount of said final assessment in this cause is $1,352.30 with interest to be added at the legal rate from the date of said assessment until paid, if it is found that said assessment is due to be paid. The amount of the assessment then is not in dispute."

The position taken by the State is that "pulpwood" includes "wood chips," as here involved, since they are used by paper manufacturers in making pulp the same as chips made by such manufacturers at their plants from "pulpwood" purchased from others by the standard cord of 128 cubic feet. In other words, as stated in appellant's brief, "pulpwood" is "any wood suitable to be made into pulp, and subsequently into paper or paper products." International, on the other hand, contends (and the undisputed evidence shows) that the term "pulpwood," at the time the Severance Tax Act was passed in 1945, had a clearly understood meaning in Alabama, that is, a round log of not less than four inches in diameter at the small end, with a diameter of not over twenty-two inches at the large end, of varying lengths from 52 to 75 inches, and measured, as specifically provided for in the Severance Tax Act, by the "standard cord of 128 cubic feet"; that "wood chips," as here involved, were unknown commercially in this state when the Act was passed in 1945; that the slabs, edgings, or residue removed or sawed from logs in manufacturing lumber were considered waste material when said Act was passed; and that it was not intended by said Act to require a severance tax to be paid on such "wood chips."

In determining coverage under a statute levying a tax, the rule is that such statute is to be construed strictly against the taxing power and liberally in favor of the taxpayer. State v. T. R. Miller Mill Company, 272 Ala. 135, 139, 130 So.2d 185; State v. Birmingham Bolt Company, 271 Ala. 528, 530, 125 So.2d 520; State v. Grayson Lumber Company, 271 Ala. 35, 38, 122 So.2d 126; State v. Helburn Co., 269 Ala. 164, 167, 111 So.2d 912; Al Means, Inc. v. City of Montgomery, 268 Ala. 31, 36, 104 So.2d 816; State ex rel. Woodruff v. Centanne, 265 Ala. 35, 38, 89 So.2d 570; State v. Reynolds Metals Company, 263 Ala. 657, 661, 83 So.2d 709. Another accepted rule of statutory construction is that, where there is nothing to indicate to the contrary, words in a statute will be given the meaning generally accepted in popular, every-day usage at the time of passage of the statute. See: Carter Oil Co. v. Blair, 256 Ala. 650, 655, 57 So.2d 64. When the question of coverage in this case is tested by these rules, we are brought, "like a martin to its gourd," to the same conclusion as that reached by the trial court.

We find nothing in the Act to justify a holding that the legislature intended to include the slabs, edgings, or residue, considered waste material when the Act was passed, within the term "pulpwood." There is clear indication of a contrary intent. The measure of the tax prescribed by the Act ("six (6¢) cents per standard cord of one hundred twenty-eight (128) cubic feet"), when considered in the light of the undisputed evidence as to the generally accepted meaning of "pulpwood" at the time of passage of the Act, evinces a legislative purpose to lay the severance tax on "pulpwood" as so defined in the evidence and not on the waste material from which the "wood chips" here involved were made.

Whether there are other reasons why the decree should be affirmed, as argued by International, there is no need to decide.

Affirmed.

LIVINGSTON, C. J., and COLEMAN and HARWOOD, JJ., concur.