191 So.2d 234

**O. C. PRYOR et al.**

**v.**

**ASSOCIATES DISCOUNT CORPORATION.**

**4 Div. 549.**

Court of Appeals of Alabama.

Aug. 16, 1966.

Rehearing Denied Oct. 11, 1966.

Joe S. Pittman, Enterprise, for appellants.

Alice L. Anderson, Enterprise, for appellee.

PRICE, Presiding Judge.

This is a suit by Associates Discount Corporation against O. C. Pryor and Laura Pryor to recover the sum of $689.85 due under an "Alabama Installment Sales Contract." The trial, by the court without a jury, resulted in a judgment for plaintiff for $639.42. Defendants appeal.

The evidence discloses that the Associates Discount Corporation is the assignee without recourse of a conditional sale contract and twenty-four promissory notes executed by defendants on May 13, 1960, to Patrick Motor Company for part of the purchase price of a 1956 Oldsmobile. The contract was for $1206.00, payable in equal monthly installments of $50.25, beginning June 25, 1960. The notes provided for interest after maturity. Defendants having defaulted in the payment of the installments, the plaintiff repossessed the automobile and sold it for $250.00. The insurance rebate amounted to $115.40. Deducting this sum from the gross unpaid balance, left a deficiency of $689.85.

· The only assignment of error is that the court erred "in entering a Judgment for appellee and against appellants in the amount of $639.42 on July 6, 1965."

The first insistence in brief is that the appellee by electing to repossess the autmobile abandoned his right to sue for the unpaid purchase price.

As a general rule when a vendor in a conditional sale, or his assignee, asserts his right to repossess the property he thereby waives his right to sue and collect for the unpaid purchase price, but the parties by contract may suspend the operation of the rule.

In Lloyds of London v. Fidelity Securities Corporation, 39 Ala.App. 596, 105 So. 2d 728, Judge Cates stated the rule as follows:

"As between the parties, the principle of freedom of contract permits the widest of latitude in the expression of their bargain between buyer and seller or borrower and lender, e. g., Campbell Motor Co. v. Spencer, 22 Ala.App. 465, 116 So. 892; Drennen Motor Car Co. v. Welded Products Co., 20 Ala.App. 382, 102 So. 600; Smith v. Lewis, 212 Ala. 133, 102 So. 21.

"When, however, the agreement impinges on areas of public policy or of statutory pre-emption, such as usury, fraudulent conveyances, recording acts, priorities and bankruptcy, it becomes necessary at times to distinguish between a title retention or conditional sales contract and

a chattel mortgage, * * *." Authorities cited.

█ The contract contained the following provision:

"I promise to pay on demand any balance remaining on this indebtedness after the proceeds of sale, less expenses of retaking, storing, repairing and selling have been applied to it. * * *."

This provision is similar to that held valid in the Drennen Motor case, supra.

It is next insisted that a suit for a deficiency Judgment arising out of the conditional sale contract cannot be maintained against these appellants because the evidence shows that Waymon Pryor, O. C. Pryor's brother, became the owner of the automobile by purchase of the same from appellees after they repossessed it from O. C., and Laura Pryor.

Waymon Pryor testified that in August, 1960, he went to appellees' office and paid the manager One Hundred Fifty Dollars and some odd cents. He was given the key to the automobile and picked it up at the Rambler lot. The payment was by cash and was made in the name of O. C. Pryor. Witness was given a receipt in the names of O. C., and Laura Pryor, but had mislaid it. He was told to make the monthly payments as previously set up, but he made no further payment and the automobile was repossessed from him in November by Associates Discount.

O. C. Pryor testified he bought the automobile from Patrick Motor Company at Enterprise on May 13, 1960. The price of the car was $1600.01. He paid $150.00 cash and was allowed credit of $250.00 for a 1951 Ford trade-in. Before he made any payment on the car his wife became ill and because of large hospital bills he was unable to pay any sum on the contract. Associates Discount repossessed the car on Friday after the third Sunday in July. It was taken to the Rambler place and parked on the lot. A representative of Associates Discount came to see him about two weeks after they took the car and wanted him to take it back, but he told him he could not take up the payments because of his wife's hospital bills. After this conversation he saw the car on the Rambler lot for two or three weeks and later saw his brother Waymon in the car. The witness said he did not make the payment of $150.75 shown as a credit to his account by plaintiff's records.

Ranny E. Cauthen, office manager for Associates Discount, testified he did not come to the Dothan office until September, 1960, and was not there when the payment of $150.75 was made on August 23, 1960. This was the only payment made on the contract and represented three installments. The records show that Waymon Pryor had possession of the car on November 3rd, and it was repossessed six days later. There is nothing in his records to indicate that the car was transferred from O. C., and Laura Pryor to Waymon Pryor. Had there been a transfer agreement O. C., Laura and Waymon should have had a copy and there would be a copy in his files. He had no independent recollection as to who picked up the car and could not state positively that it was not picked up in August. He did have a personal interview with O. C. Pryor in November. Two payments were delinquent and as they were in the process of repossessing the automobile, it was thought that O. C. Pryor's rights and liability under the contract should be explained to him. He knew Waymon Pryor had the car and he did not rule out the possibility that he got it from Associates Discount in August, but he has no written record of it. He has no written evidence that O. C., and Laura Pryor were released from liability. There is a stipulation in the standard transfer contract that a transfer does not release the original parties from liability.

█ The conflict in the evidence presented questions for the trial court to determine. We find no basis for disturbing its conclusions.

Appellants claim the evidence shows that the value of the automobile was greater than the amount for which it was sold by appellee, and that appellee is chargeable with its reasonable value.

O. C. Pryor testified the car was not driven more than one hundred fifty miles while in his possession, and it was in the same condition and had substantially the same value, $1600.00, when he turned it back in July as at the time he bought it.

Associates Discount's manager, Cauthen, testified when he examined the car in November his original opinion as to its fair market value was $350.00. It was repossessed on November 9th. "We took the car and shopped it around to the highest bidder and the car was finally sold, I believe, to J. F. C. Motors in Panama City. Mr. J. F. Coatney was the used car dealer who bought this car for $250.00. Of course the transmission was bad on it."

Waymon Pryor testified the value of the car when it was taken from him was just about what it was when he got it.

▇▇▇ The contract provides for a public or private sale, with or without notice. A mortgagee of personal property who sells at a private sale under the power of sale in the mortgage is accountable to the mortgagor for at least the fair and reasonable value of the property, regardless of the price received. Zadek v. Burnett, 176 Ala. 80, 57 So. 447. But the mortgagor has the burden of pleading and proving that the property was sold for less than its reasonable value. Johnson Bros. v. Selden, 140 Ala. 418, 37 So. 249; Harmon v. Dothan National Bank, 186 Ala. 360, 64 So. 621. The appellants failed to meet the burden in this instance.

Counsel for appellants insists in brief that the transaction was usurious, therefore the appellee was not entitled to interest and the court erred in rendering judgment for the amount set out hereinabove. This conten-tion is based on the testimony of appellee's manager on cross examination, as follows:

"Q. All right, now, in these figures here in this supposed deficiency that you are talking about here, what credit is given in connection with interest?

"A. At the time we figured the deficiency balance there was no credit for any unearned interest because the account had not been prepaid in full. * * *

"Q. In other words, so in this Six Hundred and Eighty something dollars there is no consideration given for rebate of unearned interest?

"A. Right, there was no rebate given on it, that is correct.

* * * * * *

"Q. Now that interest as is calculated there, is in excess of eight per cent, isn't it?

"A. It's actually not interest, its finance charge.

"Q. Well, let's put it this way, the finance charges, should you refer to them as interest, is in excess of eight per cent?

"A. I haven't figured it out.

"Q. Well, how about figuring it? * *

"The use of the money here from May until the repossession and the amount of interest that's charged in this figure of supposed deficiency of $689.00, see what the interest rate would be?

* * * * * *

"A. Roughly eleven. In other words, I came up with an amount financed of $973.00 for two years and figured on eight per cent the finance charge would be $155.68. All right, our finance charge was $232.98 on $973.02 for twenty-four months.

"Q. So actually then your finance charges when first computed and figured and lumped in with the principal amount of the note amounted to in excess of eleven percent based on a two year contract?

"A. Right.

"Q. Now, you have no credit—that contract didn't run for two years; it ran for some few months. Now, there was no credit given for the unexpired term of the two years?

"A. That's correct, because the account was not prepaid. We only got $150 and then $250 for the sale of the car, which was a total of $400, and we got out $973.02. So therefore we couldn't give a finance charge rebate, because the account wasn't prepaid in full.

"Q. In other words, you distinguish the finance charges from interest?

"A. Yes, sir, definitely. It is a difference."

■ In Commercial Credit Company v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A.L. R. 1437, appellant was the assignee of a conditional sale contract and note representing balance due on purchase price of an automobile. The court said that usury can attach only to a loan of money or the forbearance of a debt and that the transaction did not originate in an application for a loan, but a bona fide purchase of an automobile. The court went on to say that an agreement fixing the credit price, as distinguished from the cash delivered price, is not usurious though the advance in price for credit was in excess of the legal rate of interest on the cash price. The court quoted with approval from 39 Cyc. 927, the following:

"A vendor may well fix upon his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties but not to the courts, barring evidence of bad faith. If the parties have acted in good faith such a transaction is not a loan and is not usurious."

The court further said:

"The contract shows the 'total cost to the buyer' to be $654, and that the difference in this price and the cash delivered price is composed of interest, service, and handling charges and insurance. True, the interest and insurance cost falls far short of the advanced or credit price, but there are elements of risk, trouble, and expense incident to such transactions, which are to be taken into account (Lewis v. Hickman, supra), but of whatever items it may be composed, if in fact the sum agreed upon represents in good faith the credit price of the car as understood by the parties, the transaction is free from any taint of usury."

■ Appellee's evidence shows the "finance charge" was part of the credit price for which the car was sold, and was not usurious interest as contended by appellants, and there is nothing in the testimony of O. C. Pryor tending to rebut this evidence.

■ Where evidence is taken orally before the trial judge and such evidence is in conflict, the judgment of the trial court will not be disturbed unless it is clearly contrary to the weight of the evidence. See 2 Ala.Digest, Appeal & Error, ☜1011(1) for citation of cases. We find no basis here for disturbing the trial court's conclusions. The judgment is affirmed.

Affirmed.