384 So.2d 616 (1980)
CENTENNIAL ASSOCIATES, LTD., et al.
v.
Henry J. CLARK, Jr.
78-360.
Supreme Court of Alabama.
April 11, 1980.
Rehearing Denied June 6, 1980.
D. H. Markstein, Jr. and Curtis O. Liles, III, of Markstein & Morris, Birmingham, for appellants.
William B. Hairston of Engel, Hairston, Moses & Johnson, Birmingham, for appellee.
TORBERT, Chief Justice.
This is an appeal from the final decree of the Jefferson County Circuit Court granting Henry J. Clark, Jr., damages and declaratory relief on a real estate mortgage note executed in his favor by Centennial Associates Ltd., Gary E. Smith, R. J. McClure, Jr., and Phillip A. Watts. Upon a consideration of the terms of the note and mortgage, and under the facts, the trial court held that acceleration of the note was proper. The trial court further held that the interest provisions and the note and mortgage were not usurious under Code 1975, §§ 8-8-1 and 8-8-2. Based on these two holdings, the trial court awarded Henry J. Clark, Jr., a money judgment in the sum of $22,000. We affirm.
On June 7, 1973, Centennial, Smith, McClure and Watts, individually, borrowed $20,000 from Henry Clark, and executed the note in favor of Clark for $20,000 bearing interest at the rate of 10% per annum, and payable at $204.25 per month on the first of each month. To secure the note, Centennial executed a real estate mortgage on certain property, including the LaSalle or University Tower Apartments. This note provided: "In the event any installment shall remain unpaid for as much as ten days after the same becomes due the holder, thereof, shall have the right and option to declare the entire indebtedness secured hereby to be at once due and payable." The parties agreed that each of the required monthly payments was made on time through December 1977. The January, 1978, through April, 1978, payments were not received by Clark on the due dates. On April 26, 1978, Centennial received a letter from Clark's attorneys accelerating *617 the entire debt and returning the four checks. On June 28, 1978, Centennial, Smith, Watts and McClure filed the complaint which gave rise to this action, requesting a declaration that Clark had no right to accelerate the note, and that the interest rate charged on the note was usurious. Clark answered and counter-claimed for a money judgment on the note, which he asserted was in default.
The issue of whether acceleration was proper is primarily one of fact, and the decision of the trial court judge, who heard the evidence ore tenus, will not be disturbed on appeal unless clearly erroneous. Hall v. Polk, 363 So.2d 300 (Ala.1978); African Methodist Episcopal Church v. St. Paul Methodist Church of Selmont, 362 So.2d 868 (Ala.1978).
The trial court's holding, that the Clark note is not usurious under Code 1975, §§ 8-8-1 and 8-8-2, because the Mini-Code maximum rate section, Code 1975, § 5-19-3(a), applies to the note, is a question of statutory construction. Accordingly, this holding is not accorded the same presumption of correctness as the trial court's holding on the issue of fact.

ISSUE:
Whether the maximum finance charge section of the Mini-Code, Code 1975, § 5-19-3(a), applies only to creditors who regularly extend credit.
It is important to understand that although § 5-19-3 establishes "maximum finance charges," that section has reference to the maximum yield or return which a creditor may charge for the use of his money. The term "finance charge" is broader than the term "interest," and includes such things as time price differential, points, carrying charges or other charges however denominated. The legislature chose the term "finance charge" instead of the term "interest" so as to regulate abuses in the credit industry where additional charges were made by the lender and paid by the borrower, which were outside the common concept of "interest." Additionally, "maximum finance charges" in the Mini-Code are expressed in "add-on" terminology (i. e., these charges, $8.00 per $100, may be aggregated for the term of the loan, and added to the principal and then divided by the number of installment payments) as distinguished from the "simple interest" characterization, where an interest percentage is computed on the principal balance from time to time outstanding, for the period of time that the debtor has the use of the principal amount between installment payments. The note at issue provides for interest at a rate of 10% simple interest per annum. This rate of interest is prima facie usurious under Code 1975, § 8-8-1.

Except as otherwise provided by law, the maximum rate of interest upon the loan or forbearance of money, goods or things in action, except by written contract is $6.00 upon $100.00 for one year, and the rate of interest by written contract is not to exceed $8.00 upon $100.00 for one year and at that rate for a greater or less sum or for a longer or shorter time.
Code 1975, § 8-8-1 (emphasis added).
It is significant that the predecessor of the above usury statute, Code 1940, Tit. 9, § 60, does not contain the modifying clause, "Except as otherwise provided by law." This clause, which was added to the 1975 codification, apparently recognized the subsequent enactment of the Mini-Code, which does provide otherwise. In the instant case the 10% simple interest rate, though it exceeds the permissible 8% rate of § 8-8-1, is less than the permissible maximum yield computed on an 8% add-on basis, as authorized in § 5-19-3. The determinative question is: Which statute controls?
The appellant argues, and the dissent states, that the maximum finance charge section applies only to creditors who regularly extend credit. We do not agree. We must assume that in enacting Code 1975, § 5-19-3(a), the legislature was aware of § 252 of Article XIII of the Constitution of Alabama of 1901.
The court accordingly is entitled to look, in its effort to arrive at the intention *618 of the Legislature, to other provisions of the same act, to consider its relation to other statutory and constitutional requirements, to view its history and the purposes sought to be accomplished thereby, and critically to examine the results that will flow from giving the language in question the meaning it might have if none of these things were considered.
Abramson v. Hard, 229 Ala. 2, 155 So. 590 (1934).
Section 252 of the Constitution of Alabama of 1901 provides:
No bank shall receive, directly or indirectly, a greater rate of interest than shall be allowed by law to individuals for lending money.
Constitution of Alabama of 1901, Art. XIII, § 252. The construction of § 5-19-3(a) espoused in the dissent would have the effect of allowing banks, because they are creditors as defined in § 5-19-1(3), to charge a higher rate of interest than individuals who are not creditors under the Act.
We recognize that the definition of "creditor" states: "The provisions of this chapter apply to any such creditor irrespective of his or its status as a natural person or any type of organization." Code 1975 § 5-19-1(3). This acknowledgment does not alter the fact that the effect of § 5-19-3(a), as construed by the dissent, would be to allow banks a higher return on money they loan than is allowed by law to those individuals who do not regularly extend credit; this result would be in violation of § 252 of the Constitution of Alabama of 1901. The legislature is presumed to intend that its acts shall not violate the Constitution. Pruett v. Patton, 288 Ala. 710, 265 So.2d 130 (1972). "When an act is susceptible of two constructions, one of which would render it offensive to the Constitution and the other would not, the construction most favorable to the Constitution should be given though the less natural one." J. Blach & Sons v. Hawkins, 238 Ala. 172, 189 So. 726 (1939); James v. Todd, 267 Ala. 495, 103 So.2d 19 (1957); State Tenure Commission v. Madison County Board of Education, 282 Ala. 658, 213 So.2d 823 (1968).
If the legislature had intended to limit the application of the rate section to creditors who regularly extend credit, the statute would have so provided. The statute on its face provides that it applies to "any loan or forbearance and for any credit sale," not to any loan by one who regularly extends credit. The significance which this Court gives to the term "any" in the statute is set forth in detail in Fuller v. Associates Commercial Corporation, [Ms. April 11, 1980], released the same day as this opinion. The dissent uses the definition of "finance charge," which term does appear in § 5-19-3(a), to bootstrap into that section the definition of "creditor," which term does not appear in § 5-19-3(a). It is significant to note that §§ 5-19-4(a), 5-19-6, 5-19-11, and 5-19-15, all specifically use the word "creditor," thus limiting the application of those sections to creditors who regularly extend credit. It is also significant that the word "creditor" is conspicuously missing from § 5-19-3(a). The intention of the legislature in enacting Code 1975, § 5-19-3(a), cannot be arrived at by according no meaning to the word "any," which appears in the section, and bootstrapping into the section through the definition of "finance charge" the limited definition of the word "creditor," which term does not appear in § 5-19-3(a).
The dissent argues that our holding allows "an individual lender [who is not a creditor under the Act] to have his cake, and eat it too, because he is not subject to any of the penalties or sanctions of a creditor as set out in § 15 of the Act [§ 5-19-19]." (Footnote omitted). We admit that this is the effect of our holding and justify it by pointing out that in enacting the Mini-Code the legislature sought to protect individual debtors from those dominant in the field of lending (creditors who regularly extend credit), but found it unnecessary to protect individual debtors borrowing from individual lenders on a casual basis. Based on the language of the statute (i. e., "any"), we hold that the legislature intended the *619 maximum rate section to apply to lenders who do not regularly extend credit as well as to those who do, and we affirm the holding of the trial court.
AFFIRMED.
MADDOX, JONES, ALMON, SHORES and BEATTY, JJ., concur.
FAULKNER, J., with whom BLOODWORTH and EMBRY, JJ., concur, dissents.
FAULKNER, Justice (dissenting).
I dissent. Respectfully, I say that the majority's definitions of "creditor," "finance charge" and "consumer" make about as much sense as someone defining "illegal" to mean a "sick bird."
Section 5-19-3 provides that the maximum finance charge for any loan "... may not exceed the greater of the following...."
Section 5-19-1 defines "finance charge:"
"(1) FINANCE CHARGE. Such term shall include all charges payable directly or indirectly by the debtor and imposed directly or indirectly by the creditor as an incident to the extension of credit, including interest, time price differential, points or discount paid directly by the debtor, service, carrying or other charge however denominated, loan fee credit or investigation fee, but not including permissible default or deferral charges, permissible attorney's fees, court costs, and official fees and taxes, points or discount paid by someone other than the debtor or premiums for permissible insurance as provided by this chapter. For the purpose of determining the permissible finance charge, any discount or point paid by debtor in connection with a mortgage loan on real estate, even though paid at one time, shall be spread over the stated term of the loan or forbearance or credit sale." (Emphasis added.)
Therefore, § 5-19-3 sets maximum finance chargesnot interest. By its definition, "finance charge" includes more than interest. Moreover, the definition of "finance charge" says that it shall "include all charges imposed ... by the creditor....." (Emphasis added.) A "creditor" in turn is only a lender who "regularly extend[s] or arrange[s] for the extension of credit for which the payment of a finance charge is required." So, a "finance charge" cannot be charged unless one is a "creditor," within the meaning of the Mini-Code.
Next, this Court has narrowly defined "interest." For example, "time-price differential" is not interest. See Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39 (1926); Pryor v. Associates Discount Corp., 43 Ala.App. 394, 191 So.2d 234 (1966). And the term "time-price differential" is specifically stated in the definition of finance charge. Thus, finance charge and interest are not one and the same. It is significant to note that the Legislature did not repeal § 8-8-1 or § 8-8-2 in the 1975 Code.
In view of the fact that the Legislature did not repeal these sections, what field of operation do they now have? If they have any, then we have an equal protection question. It appears to me that these sections cannot be said to have been repealed by implication, when the Legislature left them in the 1975 Code. It is true that § 8-8-1 begins with this proviso, "Except as otherwise provided by law...." Apparently, they, with this proviso, had in mind Fletcher v. Tuscaloosa Federal Savings and Loan Association, 294 Ala. 173, 314 So.2d 51 (1975). But, Fletcher's holding was restricted to real estate mortgage loans, and that § 8-8-1 was repealed by implication if it involved that type of consumer transactions by a qualified lending institution.
The reasoning of the majority permits an individual lender to have his cake, and eat it too, because he is not subject to any of the penalties or sanctions of a creditor as set out in § 15[1] of the Act. Moreover, the *620 majority would permit the individual lender to bring suit for collection of his claim in direct violation of § 7[2]. That section has to be complied with before a creditor may sue the debtor.
Additionally, § 1(b)[3] defining "consumer" strengthens Centennial's contention that Clark cannot come within the provisions of the Mini-Code. The loan, here, to Centennial was not a loan for a personal, family, household, or agricultural purpose. It was a business loan for a business purpose. It was not a consumer loan within the meaning of the Act.
The majority has ignored discussion of "Consumer" here, but held in Fuller v. Associates Commercial Corporation, [Ms. April 11, 1980], that a consumer under the terms of the Act, and a non-consumer are one and the same when a loan is made regardless of its purpose. Again, the majority here and in Fuller have painted with a broad brush in their strained construction of the word "any."
Finally, the majority say they assume the Legislature was aware of § 252, Article XIII, Constitution 1901. Whether or not it was aware of the Constitution begs the question. Of course, a bank may not constitutionally charge more rent on its loan than an individual engaged in the business of lending money. But, the Legislature has the power to create classifications. And, an individual who qualifies with the administrator may legally charge the Mini-Code rates. If he is not qualified, in my opinion, he cannot. Otherwise, why did the Legislature enact § 18 providing that "[n]o creditor shall engage in the business of making consumer loans ... without first having obtained a license ... from the Administrator," except banks, insurance companies, trust companies, savings and loan associations, credit unions, and federal agencies? The majority have used the word "any" as their justification for permitting an individual creditor to charge Mini-Code rates of interest. By their interpretation, they have painted themselves into a corner. If "any" means what they say it means, what does "no" mean under § 18, since they have abolished the distinction between consumer and non-consumer in Fuller? What is their answer to that provision? Well, as was said in "Alice's Adventure in Wonderland," things get curiouser and curiouser.
I would reverse the trial court.
BLOODWORTH and EMBRY, JJ., concur.
NOTES
[1] Section 15. Any creditor charging a finance charge in excess of the amount authorized herein except as the result of an accidental and bona fide error in computation, shall forfeit his right to any finance charge and shall refund to the debtor the total amount of the finance charge, which may be done by reducing the amount of the debtor's principal obligation. If the debtor is entitled to a refund and the creditor refuses to refund within a reasonable time after written demand, the debtor may recover a penalty of either twice the finance charge or ten times the amount of the excess charge, whichever is greater, but in any event not less than $100, together with a reasonable attorney's fee. If the creditor has made an excess finance charge in deliberate violation of or in reckless disregard for this Act, the creditor shall have no right to receive or retain the principal or any finance charge whatsoever and the transaction shall be void. No action under this section may be brought more than one year after due date of the last scheduled payment of the agreement pursuant to which the charge was made or in the case of open end credit plans, one year after the excess charge is made.
[2] Section 7. No creditor under this act shall bring suit on any debt for collection, and no judgment by default or otherwise shall be rendered until the creditor shall file an affidavit stating that (a) there has not been a violation of provisions of this Act, and (b) that the debtor (if a resident of this state) on information and belief of creditor is a resident of the county in which the suit is filed. If such violation exists or if the debtor is not a resident of the county in which suit is filed, the suit shall be abated.
[3] Section 1. Definitions 

As used in this Act:
* * * * * *
(b) The term "Consumer", used as an adjective with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is extended by loan, sale of property or services, lease, or otherwise is a natural person, and the money, property or services which are the subject of the transaction are primarily for personal, family, household or agricultural purposes.