389 So.2d 506 (1980)
Gary Wayne FULLER
v.
ASSOCIATES COMMERCIAL CORPORATION.
79-34.
Supreme Court of Alabama.
April 11, 1980.
J. Doyle Fuller and Richard A. Lawrence of Fuller & Lawrence, Montgomery, for appellant.
William B. Hairston, Jr., of Engel, Hairston, Moses & Johanson, Birmingham, William O. Walton, Jr., LaFayette, for appellee.
D. Paul Jones, Jr., H. Hampton Boles and Stanley M. Brock of Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, for Central Bank of Birmingham.
George F. Maynard, of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for First National Bank of Birmingham, amicus curiae.
TORBERT, Chief Justice.
This is an appeal from a partial summary judgment on the issue of usury in favor of the plaintiff and counterclaim defendant, Associates Commercial Corporation. This case arose when Associates brought a detinue action against Fuller in the Circuit Court of Chambers County to secure possession of a tractor-trailer rig purchased by Fuller from Carroll Kenworth Truck Sales, Inc., and financed by Associates. Mr. Fuller was a trucker by profession and had purchased the tractor for the specific purpose of interstate trucking. Fuller brought a class action counterclaim on behalf of all legal entities who had paid Associates a greater rate of interest for non-consumer loans than that allowed by Code 1975, § 8-8-1. Fuller also answered Associates' complaint by alleging that the finance charges authorized by the Mini-Code did not apply to non-consumer loans such as the loan he obtained in financing his tractor-trailer rig, or in the alternative that the Mini-Code was unconstitutional as violative *507 of §§ 1, 6, 10, 13, 22, 35, 45, and 252 of the Constitution of Alabama of 1901 and the Fourteenth Amendment of the United States Constitution. The security agreement which is the subject of Associates' claim and Fuller's counterclaim provided that Associates would receive a yield on the money loaned to Fuller to finance his tractor-trailer rig computed at a rate in excess of the 8% simple interest allowed by Code 1975, § 8-8-1, but not in excess of permissible finance charges under Code 1975, § 5-19-3. By way of partial summary judgment, the trial court held: "The Mini-Code and the finance charges (interest rates) authorized thereby apply to commercial transactions such as the transaction which is the basis of this suit."

ISSUE I
Whether the maximum finance charge section of the Mini-Code, Code 1975, § 5-19-3(a), applies only to consumer loans.
The intent of the Alabama Legislature must be determined primarily from the language of the statute. Katz v. State Board of Medical Examiners, 351 So.2d 890 (Ala.1977); Tillman v. Sibbles, 341 So.2d 686 (Ala.1977); Fletcher v. Tuscaloosa Federal Savings and Loan Assoc., 294 Ala. 173, 314 So.2d 51 (1975). This rule of law is necessitated by the absence of any published transcripts of the proceedings of the Alabama House of Representatives or Senate. In determining legislative intent this Court will give words and phrases the same meaning they have in ordinary, everyday usage. Adams v. Mathis, 350 So.2d 381 (Ala.1977); State v. International Paper Co., 276 Ala. 448, 163 So.2d 607 (1964). Code 1975, § 5-19-3(a), the primary section of the Mini-Code which is subject to interpretation in the instant appeal, provides:
(a) The maximum finance charge for any loan or forbearance and for any credit sale, except under open-end credit plans, may equal but may not exceed the greater of the following:
(1) The total of:
a. Fifteen dollars per $100.00 per year for the first $500.00 of the original principal amount of the loan or amount financed;
b. Ten dollars per $100.00 per year for that portion of the original principal amount of the loan or original amount financed exceeding $500.00 and not exceeding $1,000.00; and
c. Eight dollars per $100.00 per year for that portion of the original principal amount of the loan or original amount financed exceeding $1,000.00, but not exceeding $2,000.00; or
(2) If the original principal amount of the loan or original amount financed exceeds $2,000.00, $8.00 per $100.00 per year of the original principal amount of the loan or amount financed.
Code 1975, § 5-19-3(a) (emphasis added).
We hold that the legislature, by employing the adjective any to specify the loans to which § 5-19-3(a) applies, intended that the Mini-Code maximum rate section apply to nonconsumer as well as consumer loans.
Our interpretation of § 5-19-3(a) is supported by comparing that section to the maximum finance charge section of the 1968 draft of the Uniform Consumer Credit Code which the legislature had available as a model for the Alabama Mini-Code.
(1) With respect to a consumer loan other than a supervised loan (Section 3.501), a lender may contract for and receive a loan finance charge, calculated according to the actuarial method, not exceeding 18 per cent per year on the unpaid balances of the principal.
U.C.C.C., § 3.201 (1968 version) (emphasis supplied).
It is significant that the Alabama Legislature rejected that portion of the language of the model Act approved by the National Conference of Commissioners on Uniform State Laws which limits the application of the maximum finance charge section to consumer loans (i. e., "With respect to a consumer loan") and chose instead the all inclusive word "any" to establish the parameters for the Act's application. Had the legislature intended to limit the application of the *508 maximum finance charge section of the Mini-Code to consumer loans, it could have simply used a modifying clause similar to the model Act as it was drafted (i. e., "With respect to a consumer loan"). To the contrary, however, our legislative body opted for the adjective "any" to delineate the loans to which the section was to apply.
In the recent case of Falkner v. Bank of the Southeast, 383 So.2d 177 (Ala.Civ.App. 1979), the Alabama Court of Civil Appeals held that Code 1975, § 5-19-3, applies to non-consumer as well as consumer loans.
It does not matter whether the debt is for business purposes or personal use. Therefore, defendant's contention is without merit. It is well settled that where statutory language is plain and unambiguous, the statute should be given the meaning therein plainly expressed. See, Mobile County Republican Executive Committee v. Mandeville, Ala., 363 So.2d 754 (1978).
Some sections of the Mini-Code are expressly limited to what can be termed consumer or non-business transactions. On the other hand, a number of its sections, in addition to § 5-19-3, are not so limited. Had the legislature intended for § 5-19-3 to be limited to consumer transactions, it would have so stated.
Falkner v. Bank of the Southeast, 383 So.2d 177 at 178 (Ala.Civ.App.1979).
The appellant argues that § 5-19-3(a) applies only to consumer loans, relying on the title of the original act (i. e., "Alabama Consumer Credit Act of 1971"), Acts of Alabama of 1971, Act No. 2052. This is the same type of argument that was advanced by the appellees, but rejected by the Court, in Cole v. Sloss-Sheffield Steel and Iron Co., 186 Ala. 192, 65 So. 177 (1914). In that case the appellees argued that because Code 1907, § 1035 was contained in a chapter of the Code subtitled "An act to regulate the mining of coal in Alabama," the term "any" in § 1035 did not mean any mine, but any coal mine. In rejecting the appellee's argument, the Court said the following of the term "any":
As employed in sections 2933 and 1035, any must be given its usual, ordinary signification in such circumstances. It means all, every, as there used....

Any has been the object of much judicial consideration. In 3 Cyc. L. & P. p. 1463 et seq., exhaustive treatment has been accorded the word. Upon occasions it has been accorded a narrower meaning and effect than that we have stated it must here receive. Our own court has several times interpreted it as importing, in the concrete cases under view, that wide significationthat it meant all, every, in the relation found. These are our cases referred to: Taylor v. Hutchinson, 145 Ala. 202, 205, 40 So. 108; County of Dallas v. Timberlake, 54 Ala. 403, 412; Gandy v. State, 82 Ala. 61, 2 So. 465; Wilson v. Taylor, 89 Ala. 368, 370, 8 So. 149; Millard's Adm'rs v. Hall, 24 Ala. 209, 229, 232. In Gandy's Case, supra, it was affirmed that the expression any election comprehended in ipsis verbis all elections, special or general, of the character defined in the statute there considered. To the like direct and comprehensive effect was the statement of the court in interpreting the words any contract in question in Wilson v. Taylor, supra.

It is urged in brief that, because the codifications were of the act of 1897, which by its title and context was confined to coal mines, the irrefragable implication is that coal mines only were intended to be subjected to the inhibition of Code 1896, § 2933, and Code 1907, § 1035.
This contention is, of course, worthy of presentationan argument that should be and has been considered and carefully weighedbut our conclusion is that, though according a fair influence thereto, it is not sufficient to overcome the clear effect of the very comprehensive and unequivocal term any mine as employed in the codifications. To conclude to the contrary would require the court to ascribe to the word any no more comprehensive significance than to the word thean interpretation that cannot be justified or approved.
. . . . . .

*509 ... If there are provisions in the chapter mentioned that are restricted to coal mines for their operation, as doubtless there are, they neither depend upon section 1035 nor reflect upon the stated application of section 1035. That section (1035) is independent of any other in our positive law on the subject....
Cole v. Sloss-Sheffield Steel and Iron Co., 186 Ala. 192, 65 So. 177 (1914) (emphasis added).
This Court must give effect to the legislature's choice of the word "any" rather than judicially rewriting the statute so that it applies only to consumer loans.

ISSUE II
Whether the Mini-Code is unconstitutional as violative of §§ 1, 6, 10, 13, 22, 35, 45 and 252 of the Constitution of Alabama of 1901, or Amendment Fourteen of the United States Constitution.
Appellant aggregates his constitutional challenges under §§ 1, 6, 10, 13, 22 and 35 of the Constitution of Alabama of 1901, arguing that those sections "relate to the equal protection and due process of the laws." Some of those sections of the Constitution of Alabama of 1901 are irrelevant to the instant case (e. g., § 6 deals with the rights of persons in criminal prosecutions and § 10 guarantees all persons the right to prosecute or defend a civil cause of action). The remaining sections of the Constitution of Alabama of 1901 which appellant combined in his equal protection challenge, as well as Amendment Fourteen of the United States Constitution, would be relevant to a determination of the constitutionality of the Mini-Code if this Court had adopted the dissent's interpretation of the Mini-Code which would treat similarly situated lenders differently. However, this Court's holding as to Issue I, i. e., that the maximum finance charge section of the Mini-Code applies to non-consumer as well as to consumer loans, has rendered these constitutional challenges moot. Our holding in Centennial Associates, Ltd. v. Clark, 384 So.2d 616 (Ala. 1980), released the same day as this opinion, that Mini-Code rates are applicable to lenders who regularly extend credit, as well as to individual lenders who extend credit only on a casual basis, renders moot appellant's constitutional challenge under § 252, which states that no bank may receive a greater rate of interest than is allowed to individuals.
Appellant also argues that the Mini-Code violates § 45 of the Constitution of Alabama of 1901, which requires the title of acts to contain but one subject which is clearly expressed in its title. All infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code and the code adopted by the legislature. Bluthenthal v. I. Trager and Company, 131 Ala. 639, 31 So. 622 (1901); Bales v. State, 63 Ala. 30 (1879). Even if this were not so, we believe that the title of the act (the first two lines of which read: "To provide maximum finance charges for loans and credit sales; to regulate extensions of credit ...") does contain but one subject, which is clearly expressed in the title of the act, i. e., the regulation of the extensions of credit. We hold the act passes constitutional muster under the instant challenges.
In conclusion, all but one of appellant's constitutional challenges were premised on the dissent's interpretation of the Mini-Code maximum finance charge section as applicable only to consumer loans made by lenders who regularly extend credit. In Centennial, supra, and the instant case, this Court has held that the maximum finance charge rates are applicable to non-consumer loans made on a casual basis as well as consumer loans made by "creditors" as defined in the act. In so holding, this Court has merely given effect to the plain meaning of the statutory language: "The maximum finance charge for any loan ...." Code 1975, § 5-19-3.
AFFIRMED.
MADDOX, JONES, ALMON, SHORES and BEATTY, JJ., concur.
FAULKNER, J., with whom EMBRY, J., concurs, dissents.
BLOODWORTH, J., not sitting.
*510 FAULKNER, Justice (dissenting).
For this case, I adopt my dissent as written in Centennial Associates, Ltd. v. Clark, 384 So.2d 616 (Ala.1980), as to Issue I.
As to Issue II, I am of the opinion that Fuller has standing to test the constitutionality of the Act. But, I would agree that the Court cannot consider that issue because it does not appear that the Attorney General was served with a copy of the complaint, or that he was given notice, and he did not participate in the case in any way. See Jones v. Sears Roebuck & Co., 342 So.2d 16 (Ala.1977); § 6-6-227, Code of Alabama, 1975.
EMBRY, J., concurs.