I dissent. Respectfully, I say that the majority's definitions of "creditor," "finance charge" and "consumer" make about as much sense as someone defining "illegal" to mean a "sick bird."
Section 5-19-3 provides that the maximum finance charge for any loan ". . . may not exceed the greater of the following. . . ."
Section 5-49-1 defines "finance charge:"
 "(1) FINANCE CHARGE. Such term shall include all charges payable directly or indirectly by the debtor
and imposed directly or indirectly by the creditor as an incident to the extension of credit, including interest, time price differential, points or discount paid directly by the debtor, service, carrying or other charge however denominated, loan fee credit or investigation fee, but not including permissible default or deferral charges, permissible attorney's fees, court costs, and official fees and taxes, points or discount paid by someone other than the debtor or premiums for permissible insurance as provided by this chapter. For the purpose of determining the permissible finance charge, any discount or point paid by debtor in connection with a mortgage loan on real estate, even though paid at one time, shall be spread over the stated term of the loan or forbearance or credit sale." (Emphasis added.)
Therefore, § 5-19-3 sets maximum finance charges — notinterest. By its definition, "finance charge" includes more than interest. Moreover, the definition of "finance charge" says that it shall "include all charges . . . imposed . . . by thecreditor. . . ." (Emphasis added.) A "creditor" in turn is only
a lender who "regularly extend[s] or arrange[s] for the extension of credit for which the payment of a finance charge is required." So, a "finance charge" cannot be charged unless one is a "creditor," within the meaning of the Mini-Code.
Next, this Court has narrowly defined "interest." For example, "time-price differential" is not interest. See Commercial CreditCo. v. Tarwater, 215 Ala. 123, 110 So. 39 (1926); Pryor v.Associates Discount Corp., 43 Ala. App. 394, 191 So.2d 234 (1966). And the term "time-price differential" is specifically stated in the definition of finance charge. Thus, finance charge and interest are not one and the same. It is significant to note that the Legislature did not repeal § 8-8-1 or § 8-8-2 in the 1975 Code.
In view of the fact that the Legislature did not repeal these sections, what field of operation do they now have? If they have any, then we have an equal protection question. It appears to me that these sections cannot be said to have been repealed by implication, when the Legislature left them in the 1975 Code. It is true that § 8-8-1 begins with this proviso, "Except as otherwise provided by law. . . ." Apparently, they, with this proviso, had in mind Fletcher v. Tuscaloosa Federal Savings andLoan Association, 294 Ala. 173, 314 So.2d 51 (1975). But,Fletcher's holding was restricted to real estate mortgage loans, and that § 8-8-1 was repealed by implication if it involved that type of consumer transactions by a qualified lending institution.
The reasoning of the majority permits an individual lender to have his cake, and eat it too, because he is not subject to any of the penalties or sanctions of a creditor as set out in § 15[1]
of the Act. Moreover, the *Page 620 
majority would permit the individual lender to bring suit for collection of his claim in direct violation of § 7[2]. That section has to be complied with before a creditor may sue the debtor.
Additionally, § 1 (b)[3] defining "consumer" strengthens Centennial's contention that Clark cannot come within the provisions of the Mini-Code. The loan, here, to Centennial was not a loan for a personal, family, household, or agriculturalpurpose. It was a business loan for a business purpose. It was not a consumer loan within the meaning of the Act.
The majority has ignored discussion of "Consumer" here, but held in Fuller v. Associates Commercial Corporation, [Ms. April 11, 1980], that a consumer under the terms of the Act, and a non-consumer are one and the same when a loan is made regardless of its purpose. Again, the majority here and in Fuller have painted with a broad brush in their strained construction of the word "any."
Finally, the majority say they assume the Legislature was aware of § 252, Article XIII, Constitution 1901. Whether or not it was aware of the Constitution begs the question. Of course, a bank may not constitutionally charge more rent on its loan than an individual engaged in the business of lending money. But, the Legislature has the power to create classifications. And, an individual who qualifies with the administrator may legally charge the Mini-Code rates. If he is not qualified, in my opinion, he cannot. Otherwise, why did the Legislature enact § 18 providing that "[n]o creditor shall engage in the business of making consumer loans . . . without first having obtained a license . . . from the Administrator," except banks, insurance companies, trust companies, savings and loan associations, credit unions, and federal agencies? The majority have used the word "any" as their justification for permitting an individual creditor to charge Mini-Code rates of interest. By their interpretation, they have painted themselves into a corner. If "any" means what they say it means, what does "no" mean under § 18, since they have abolished the distinction between consumer and non-consumer in Fuller? What is their answer to that provision? Well, as was said in "Alice's Adventure in Wonderland," things get curiouser and curiouser.
I would reverse the trial court.
BLOODWORTH and EMBRY, JJ., concur.
[1] Section 15. Any creditor charging a finance charge in excess of the amount authorized herein except as the result of an accidental and bona fide error in computation, shall forfeit his right to any finance charge and shall refund to the debtor the total amount of the finance charge, which may be done by reducing the amount of the debtor's principal obligation. If the debtor is entitled to a refund and the creditor refuses to refund within a reasonable time after written demand, the debtor may recover a penalty of either twice the finance charge or ten times the amount of the excess charge, whichever is greater, but in any event not less than $100, together with a reasonable attorney's fee. If the creditor has made an excess finance charge in deliberate violation of or in reckless disregard for this Act, the creditor shall have no right to receive or retain the principal or any finance charge whatsoever and the transaction shall be void. No action under this section may be brought more than one year after due date of the last scheduled payment of the agreement pursuant to which the charge was made or in the case of open end credit plans, one year after the excess charge is made.
[2] Section 7. No creditor under this act shall bring suit on any debt for collection, and no judgment by default or otherwise shall be rendered until the creditor shall file an affidavit stating that (a) there has not been a violation of provisions of this Act, and (b) that the debtor (if a resident of this state) on information and belief of creditor is a resident of the county in which the suit is filed. If such violation exists or if the debtor is not a resident of the county in which suit is filed, the suit shall be abated.
[3] Section 1. Definitions —
As used in this Act:
* * * * * *
 (b) The term "Consumer", used as an adjective with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is extended by loan, sale of property or services, lease, or otherwise is a natural person, and the money, property or services which are the subject of the transaction are primarily for personal, family, household or agricultural purposes. *Page 621