Honorable Neal Birmingham District Attorney P.O. Box 555 Linden, Texas 75563
Re: Whether the exception of section 5(b), article 6701d-11, V.T.C.S., applies to pulpwood or logs being transported to a mill
Dear Mr. Birmingham:
You request an interpretation of the statutory provision which creates a forestry exception in article 6701d-11, section 5(b), V.T.C.S. Specifically, you ask whether the exception applies to the hauling of logs or pulpwood from a wood yard to a lumber mill or to a paper mill. Section 5(a) of article 6701d-11 makes it unlawful to operate on the public highways a commercial motor vehicle, truck-tractor, trailer, or semitrailer having a weight in excess of the specified weight limitations. In 1983, the legislature added section 5(b), which further provides that
 (b) No person shall load, or cause to be loaded, a vehicle for operation on the public highways of this state with the intent to violate the weight limitations in Subsection (a) of this section. Intent to violate those limitations is presumed if the loaded vehicle exceeds the applicable gross vehicular weight limit by 15 percent or more. This subsection does not apply to the loading or causing to be loaded of an agricultural or a forestry commodity prior to the processing of the commodity. (Emphasis added).
Your question is not whether the operator of an overloaded truck violates article 6701d-11, but whether the owner or operator of a wood yard has loaded or caused to be loaded a vehicle for operation on the public highways in violation of section 5(b).
You advise us that wood, after being cut in the forest, is first transported to a wood yard and then transported from the wood yard to a mill. The wood may be transported to a mill on the same truck that hauled it to the wood yard without being unloaded and reloaded at the wood yard. It may be unloaded, stacked, and subsequently reloaded for hauling to the mill. It may be unloaded, stacked, and subsequently, at the option of the wood yard, sold to a saw mill for lumber or cut into lengths suitable for pulpwood and hauled to a paper mill. Even when there is no provable alteration of the wood itself at the wood yard, there may be a change of ownership. The issue in question is whether the logs or pulpwood leaving a wood yard have been processed within the meaning of the statute so that the forestry exception no longer applies, or whether they remain "a forestry commodity prior to the processing of the commodity," in which case the owner or operator of the wood yard is protected from criminal charges under section 5(b) of article 6701d-11. We conclude that the legislature did not intend the forestry exception to apply to a vehicle hauling logs or pulpwood from a wood yard to a lumber mill or paper mill.
What constitutes ''processing" is a complex question. See Commonwealth v. Babcock Lumber Company, 272 A.2 522, 526 (Pa. 1971). The Texas Legislature did not define "processing," and we have not found it defined by a court in this context. It is well settled that an ambiguous statute must be construed consistent with legislative intent. Newsom v. State, 372 S.W.2d 681, 683
(Tex.Crim.App. 1963). We assume that the legislature intends words used in a statute to be understood in their ordinary sense except where they are given a different meaning in the act. See Markowsky v. Newman, 136 S.W.2d 808 (Tex. 1940); Attorney General Opinion JM-106 (1983). There are times when it is necessary to consult a dictionary to ascertain the appropriate meaning of a word in a statute. See Board of Insurance Commissioners v. Duncan, 174 S.W.2d 326, 328 (Tex.Civ.App.-Amarillo 1943, writ ref'd); Attorney General Opinion H-1277 (1978).
According to Black's Law Dictionary at page 1084 (5th ed. 1979), one meaning of process is "to prepare for market or to convert into marketable form." Supreme courts in other states have frequently found the term, in analogous contexts in other statutes, to mean the preparation of a product for market or conversion of a product into marketable form. In Moore v. Farmers Mutual Mfg. Ginning Co., 77 P.2d 209, 211 (Ariz. 1938), the Supreme Court of Arizona stated the following:
 The word `process' is given several definitions by Webster's New International Dictionary, the standard authority for the meaning of the words of the English language. The one which obviously applies to an operation like the ginning of cotton is as follows: `to subject (especially raw material) to a process of manufacturing, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking.' It will be seen that the essential portion of the definition is to `prepare raw material . . . for the market. . . .'
See also State v. Four States Drilling Co., 177 So.2d 828, 831
(Ala. 1965) (quoting the same definition from Webster's New International Dictionary); Employment Security Commission of Arizona v. Bruce Church, Inc., 507 P.2d 108, 111 (Ariz. 1973) (cooling of lettuce is incident to preparation for market though it does not change its nature or form); Bay Bottled Gas Co. v. Michigan Department of Revenue, 74 N.W.2d 37, 40 (Mich. 1955) (processing is refining, development, preparation, or converting of material, especially in a raw state, into marketable form); Southern Natural Gas Co. v. State, 73 So.2d 731, 735 (Ala. 1953) (process is synonymous with preparation for market and conversion into marketable form); Colbert Mill Feed Co. v. Oklahoma Tax Commission, 109 P.2d 504, 506 (Okla. 1941) (definition of process quoted from Webster's New International Dictionary shows it is synonymous with preparation for the market).
Your inquiry relates to logs and pulpwood leaving a wood yard. Logs and pulpwood do not have fixed definitions in the law, but clearly they are forestry commodities. Decisions of the supreme courts of other states have found that a log is the trunk of a tree, cut down and stripped of its branches, or the trunk of a tree cut into different lengths. See Bishop v. DuBose,113 S.E.2d 309, 313 (N.C. 1960); State v. Addington, 27 S.E. 988, 990
(N.C. 1897). Other decisions have described pulpwood as wood logs, peeled or unpeeled, usually cut in lengths suitable for manufacturing into wood pulp, which commonly is used in making paper. Dead River Co. v. Assessors of Houlton, 103 A.2d 123, 129
(Me. 1953). Cf. State v. International Paper Company,163 So.2d 607 (Ala. 1964) (wood chips not same as pulpwood). You indicate that the pulpwood in question is a tree that has been cut down, trimmed, and cut into five to seven foot lengths. Even if wood is transported to a mill on the same truck without its being unloaded, it has been visually inspected and sorted and determined to be in suitable condition for transportation to a mill.
Recently, a Texas Court of Appeals determined the meaning of timber as used in a motor carrier certificate of convenience and necessity issued by the Texas Railroad Commission. The court stated that
 We hold that the word `timber', as used in appellant's certificate . . . includes only trees not worked upon beyond their being felled and subjected to such other processing as may be reasonably necessary to facilitate their transportation by motor carrier, for example, removing limbs from the fallen trees and sawing the logs to lengths suitable for transport by motor carrier. (Emphasis added).
Kinner Transp. Enterprises, Inc. v. State, 644 S.W.2d 69, 70
(Tex.App.-Austin 1982, writ ref'd n.r.e.). The court found that "timber" as used in the certificate has a meaning virtually synonymous with logs.
By the time logs and pulpwood leave a wood yard, they are products that have been prepared for market or converted into marketable form by the trimming of branches, by sorting, by reloading, or by cutting into appropriate lengths, and may already have entered into channels of commerce.
It is an established rule of construction that an exemption from the general terms of a statute is strictly construed. See Attorney General Opinion M-507 (1969). It is our opinion that, in the event of a judicial interpretation of the exception for a forestry commodity prior to the processing of the commodity, the exception would not be extended to the hauling of logs or pulpwood from a wood yard under the facts presented to us.
In addition, it is our opinion that if the legislature had intended motor vehicles loaded with logs or pulpwood to be exempt from the provisions of article 6701d-11, section 5(b), the legislature would have expressly so provided as it did in article 6701d-11, section 6(b), when it exempted motor vehicles loaded with timber or pulpwood from the provisions of subdivision 1 of section 6 of the same statute. The latter provision requires the operator or owner of a motor vehicle to unload the vehicle to the extent necessary to reduce its weight to the lawful maximum before further operation of an overweight vehicle on the public road, unless the load consists of livestock. Subdivision 6 of section 6 was enacted six years prior to the enactment of section 5(b) and provides that
 Notwithstanding Subdivision 1 of Section 6 of this Act, the operator or the owner of a motor vehicle loaded with timber or pulp wood or agricultural products in their natural state being transported from the place of production to the place of market or first processing, the operator or owner of a vehicle crossing a highway as provided by Section 5-1/3 of this Act, or the operator or owner of a vehicle crossing a highway as provided by Section 5-2/3 of this Act, is not required to unload any portion of his load. (Emphasis added).
Unlike the exception in section 5(b), the exemption to subdivision 1 of section 6 expressly applies to a vehicle loaded with timber or pulpwood prior to any processing of the timber or pulpwood.
This opinion is limited to your request for a statutory interpretation and does not address any additional issues.
 SUMMARY
The statutory exception in section 5(b) of article 6701d-11, V.T.C.S., for a forestry commodity prior to the processing of the commodity does not apply to a vehicle hauling logs or pulpwood from a wood yard to a lumber mill or paper mill.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Tom Green First Assistant Attorney General
 David R. Richards Executive Assistant Attorney General
 Robert Gray Special Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Nancy Sutton Assistant Attorney General